## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

------------------------------------------------------- x

In re:                                                  :       Case No. 10-16642
                                                        :
Ventilex USA Inc.,                                      :       Chapter 11
                                                        :
                          Debtor.                       :       Judge Jeffery P. Hopkins

------------------------------------------------------- x

## JOINT PLAN OF REORGANIZATION OF VENTILEX USA INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS OF APRIL 1, 2011, AS MODIFIED

| | |
|---|---|
| Lee D. Powar (0033679) | Scott N. Schreiber (*Pro Hac Vice*) |
| Rocco I. Debitetto (0073878) | Shelly A. DeRousse (*Pro Hac Vice*) |
| Hahn Loeser & Parks LLP | Stahl Cowen Crowley Addis, LLC |
| 200 Public Square, Suite 2800 | 55 West Monroe Street, Suite 1200 |
| Cleveland, Ohio 44114 | Chicago, Illinois 60603 |
| Telephone:   (216) 621-0150 | Telephone:   (312) 641-0060 |
| Facsimile:   (216) 241-2824 | Facsimile    (312) 641-6959 |
| ldpowar@hahnlaw.com | sschreiber@stahlcowen.com |
| ridebitetto@hahnlaw.com | sderousse@stahlcowen.com |
| | |
| *COUNSEL FOR DEBTOR AND* | *COUNSEL FOR THE OFFICIAL* |
| *DEBTOR-IN-POSSESSION* | *COMMITTEE OF UNSECURED CREDITORS* |

4049573.4

## TABLE OF CONTENTS

ARTICLE I. DEFINITIONS .............................................................................................. 1

ARTICLE II. TREATMENT OF ADMINISTRATIVE EXPENSE
CLAIMS, PROFESSIONAL COMPENSATION AND
REIMBURSEMENT CLAIMS, AND PRIORITY TAX CLAIMS ......................... 10

2.1    Administrative Expense Claims. ............................................................. 10

2.2    Professional Compensation and Reimbursement Claims. ..................... 10

2.3    Priority Tax Claims. ................................................................................ 11

ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY
INTERESTS. ............................................................................................................. 11

ARTICLE IV. TREATMENT OF CLAIMS AND EQUITY INTERESTS ...................... 12

4.1    Class 1: Priority Non-Tax Claims. ......................................................... 12

4.2    Class 2: Prepetition Lender Claim. ........................................................ 12

4.3    Classes 3: Paramount Secured Claim. .................................................... 13

4.4    Class 4:  Cal Nut Claim. ......................................................................... 13

4.5    Class 5: JBS Claim. ................................................................................ 14

4.6    Class 6: Silver Creek Claim. .................................................................. 14

4.7    Class 7: General Unsecured Claims. ...................................................... 15

4.8    Class 8:  Equity Interests. ....................................................................... 15

ARTICLE V. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS .................................. 15

5.1    Impaired Classes to Vote on Plan. ......................................................... 15

5.2    Acceptance by Class of Creditors. ......................................................... 16

5.3    Cramdown. .............................................................................................. 16

ARTICLE VI. IMPLEMENTATION OF THE PLAN .................................................... 16

6.1    Restructuring Transactions. .................................................................... 16

6.2    Section 1145 Securities. .......................................................................... 17

6.3    Corporate Action. .................................................................................... 17

6.4    Existence. ................................................................................................ 17

6.5    Vesting of Assets in the Reorganized Debtor. ....................................... 18

6.6    Cancellation of Debt and Equity Securities and Related Obligations. ........... 18

6.7    Effectuating Documents and Further Transactions. ............................... 18

i

ARTICLE VII. PRESERVATION AND PROSECUTION OF CAUSES OF
ACTION HELD BY THE DEBTOR.................................................................18

7.1    Preservation and Prosecution of Causes of Action............................18

ARTICLE VIII. PROVISION FOR TREATMENT OF DISPUTED
CLAIMS UNDER THE PLAN ......................................................................19

8.1    Objections to Claims; Prosecution of Disputed Claims. ...................19

8.2    No Distributions Pending Allowance. ................................................20

8.3    Estimation of Claims. .........................................................................20

8.4    Payments and Distributions on Disputed Claims. .............................20

ARTICLE IX. THE LIQUIDATION TRUST .................................................21

9.1    Establishment of the Liquidation Trust. ...........................................21

9.2    Trust Governance. ..............................................................................21

9.3    Initial Funding of the Trust. ..............................................................22

9.4    Trust Distributions. ............................................................................22

9.5    Transfer of all Other Liquidation Trust Assets to the Liquidation
Trust. ..................................................................................................22

9.6    Purpose of the Liquidation Trust.......................................................23

9.7    Funding Expenses of the Liquidation Trust. .....................................23

9.8    Litigation; Responsibilities of the Liquidation Trustee. ...................23

9.9    Investment Powers. ............................................................................23

9.10   Annual Distribution; Withholding. ....................................................24

9.11   Reporting Duties.................................................................................24

9.12   Trust Implementation. ........................................................................26

9.13   Registry of Beneficial Interests. ........................................................26

9.14   Termination. .......................................................................................26

ARTICLE X. PROVISIONS FOR THE ESTABLISHMENT AND
MAINTENANCE OF DISBURSEMENT ACCOUNT(S)..............................26

10.1   Establishment of Disbursement Account(s) by Liquidation Trustee. ...........26

10.2   Maintenance of Disbursement Account(s). ........................................26

ARTICLE XI. PROVISIONS REGARDING DISTRIBUTIONS UNDER
THE PLAN...................................................................................................27

11.1   Distributions by Liquidation Trustee..................................................27

11.2   Manner of All Payment under the Plan. .............................................27

11.3   Delivery of Distributions.....................................................................27

ii

11.4 Undeliverable Distributions................................................................27

11.5 Time Bar to Cash Payments.............................................................28

11.6 Setoffs.................................................................................................28

11.7 Allocation of Plan Distributions Between Principal and Interest..................28

ARTICLE XII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...................29

12.1 Assumption or Rejection of Executory Contracts and Unexpired Leases......................................................................................29

12.2 Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.................................................29

12.3 Inclusiveness....................................................................................29

12.4 Cure of Defaults for Assumed Executory Contracts and Unexpired Leases..........................................................30

12.5 Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan. ...............30

ARTICLE XIII. CREDITORS' COMMITTEE ...................................................30

13.1 Dissolution of Committee.................................................................30

ARTICLE XIV. CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN; IMPLEMENTATION PROVISIONS .............................30

14.1 Conditions Precedent to Effective Date of the Plan. ...................30

14.2 Failure of Conditions Precedent. .................................................31

14.3 Waiver of Conditions Precedent. .................................................31

ARTICLE XV. PROVISIONS REGARDING CORPORATE GOVERNANCE AND MANAGEMENT OF THE REORGANIZED DEBTOR AND THE PLAN SPONSOR ...............................................31

15.1 General. ............................................................................................31

15.2 Directors and Officers......................................................................31

ARTICLE XVI. EFFECT OF CONFIRMATION ...............................................32

16.1 No Alter Ego.....................................................................................32

16.2 Title to and Vesting of Assets. .......................................................32

16.3 Discharge of Claims and Termination of Equity Interests.............32

16.4 Discharge of Debtor.........................................................................33

16.5 Injunction on Claims........................................................................33

16.6 Term of Existing Injunctions or Stays............................................34

16.7 Exculpation. .....................................................................................34

iii

16.8   Preservation of Causes of Action / Reservation of Rights. ............................... 35

16.9   Injunction on Causes of Action. ................................................................. 35

16.10  Limited Release of Officers, Directors, and Employees ......................... 36

16.11  Release and Limitation of Liability. ........................................................ 36

ARTICLE XVII. RETENTION OF JURISDICTION .............................................. 37

17.1   Retention of Jurisdiction. ......................................................................... 37

ARTICLE XVIII. MODIFICATION, REVOCATION, OR
WITHDRAWAL OF THE PLAN ................................................................ 39

18.1   Modification of the Plan. .......................................................................... 39

18.2   Revocation or Withdrawal of the Plan. .................................................... 39

ARTICLE XIX. MISCELLANEOUS PROVISIONS ............................................ 40

19.1   Effectuating Documents and Further Transactions. ................................ 40

19.2   Withholding and Reporting Requirements. .............................................. 40

19.3   Plan Supplement. ...................................................................................... 40

19.4   Payment of Statutory Fees. ....................................................................... 41

19.5   Expedited Tax Determination. .................................................................. 41

19.6   Post-Confirmation Date Fees and Expenses. ........................................... 41

19.7   Substantial Consummation. ...................................................................... 41

19.8   Severability. .............................................................................................. 41

19.9   Governing Law. ......................................................................................... 42

19.10  Time. ......................................................................................................... 42

19.11  Binding Effect. .......................................................................................... 42

19.12  Exhibits/Schedules. ................................................................................... 42

19.13  Notices. ..................................................................................................... 42

19.14  Closing of the Chapter 11 Case. .............................................................. 43

19.15  Section Headings. ..................................................................................... 43

19.16  Exemption from Registration. .................................................................. 43

19.17  Exemption from Transfer Taxes. .............................................................. 43

19.18  Conflicts/Inconsistencies. ......................................................................... 43

iv

Ventilex USA Inc. and the Official Committee of Unsecured Creditors of Ventilex USA Inc. (the "Committee" and, together with the Debtor, the "Plan Proponents") hereby propose the following chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I.

## DEFINITIONS

**Interpretation; Application of Definitions; Rules of Construction:** Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. Unless otherwise specified, (a) all article, section, schedule, or exhibit references in the Plan are to the respective article of, section in, schedule to, or exhibit to the Plan, as the same may be altered, amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof; and (b) all references to dollars are to the lawful currency of the United States of America. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

As used in the Plan, the following terms shall have the respective meanings specified below:

1.1     **Administrative Expense Claim** means (a) any Claim constituting a cost or expense of administration of the Chapter 11 Case asserted or authorized to be asserted in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code during the period up to and including the Effective Date and (b) any fees or charges assessed against the Debtor's estate pursuant to 28 U.S.C. § 1930.

1.2     **Allowed** means, with reference to any Claim, (i) any Claim that has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed or objection thereto interposed, (ii) any Claim that is not Disputed, (iii) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtor or the Reorganized Debtor, as the case may be, pursuant to a Final Order of the Bankruptcy Court, or (iv) any Claim that has been allowed hereunder or by Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative

Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Claim from and after the Petition Date.

1.3     **Avoidance Actions** means Causes of Action arising under chapter 5 of the Bankruptcy Code, including, but not limited to, Causes of Action arising under sections 502(d), 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code, or arising under applicable state law.

1.4     **Bankruptcy Code** means chapter 11 of title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

1.5     **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Ohio having jurisdiction over the Chapter 11 Case.

1.6     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code.

1.7     **Board** means the board of directors of the Reorganized Debtor.

1.8     **Business Day** means any day other than a Saturday, a Sunday, or any legal holiday as set forth in Bankruptcy Rule 9006(a).

1.9     **BV** means Ventilex B.V., together with all successors and/or assigns of Ventilex B.V.

1.10    **BV Equipment Claim** means the General Unsecured Claim of BV, arising on account of unpaid goods and/or services provided to the Debtor as of the Petition Date.

1.11    **Cal Nut** means the California Nut Company.

1.12    **Cal Nut Claim** means the General Unsecured Claim of Cal Nut in the amount of $367,726.81 [Claim No. 13-1], as the same may be amended, supplemented, or otherwise modified.

1.13    **Cash** means the lawful currency of the United States of America.

1.14    **Cash Equivalent** means securities or instruments of the type permitted under section 345 of the Bankruptcy Code.

1.15    **Causes of Action** means, without limitation, any and all actions, causes of action, proceedings, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, objections to Claims, benefits of subordination of Claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

2

4049573.4

1.16   **Chapter 11 Case** means the case commenced under chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date, bearing the caption *In re Ventilex USA Inc.*, Chapter 11 Case No. 10-16642 and currently pending before the Bankruptcy Court.

1.17   **Claim** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.18   **Class** means a category of Claims or Equity Interests as set forth in Article III of the Plan.

1.19   **Collateral** means any property or interest in property of the estate of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.20   **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation on the docket of the Bankruptcy Court with respect to the Chapter 11 Case.

1.21   **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.22   **Creditor** means any Entity holding a Claim against the Debtor's estate or, pursuant to section 102(2) of the Bankruptcy Code, against property of the Debtor, that arose or is deemed to have arisen prior to or as of the Petition Date.

1.23   **Debtor** means Ventilex USA Inc.

1.24   **Debtor-in-Possession** means the Debtor as Debtor-in-Possession pursuant to sections 1101(1) and 1107(a) of the Bankruptcy Code.

1.25   **Debtor's Professionals** means professionals employed by the Debtor or Debtor-in-Possession pursuant to section 327 or 328 of the Bankruptcy Code.

1.26   **Dijkman Claims** means, and collectively refers to, any and all rights, claims, causes of action, and remedies of the Debtor against or with respect to Henk Dijkman.

1.27   **DIP Loan** means the loan to the Debtor by BV pursuant to the DIP Order.

1.28   **DIP Loan Balance** means all unpaid amounts owed to BV under the DIP Loan.

1.29   **DIP Order** means the *Order Under 11 U.S.C. §§ 105(a), 361, 362, 363 and 364 and Federal Bankruptcy Rules 4001, 6004, and 9014: (I) Authorizing Debtor (A) to Obtain Secured Superpriority Post-Petition Financing, and (B) to Use Cash Collateral of Pre-Petition Lender, (II) Granting Adequate Protection to Pre-Petition Lender, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 160], as the same may be amended, extended, supplemented, or otherwise modified.

3

1.30   **Disbursement Agent** means (a) the Reorganized Debtor, in the case of Allowed Claims to be paid by the Reorganized Debtor; and (b) the Liquidating Trustee, in the case of Allowed Claims to be paid by the Liquidating Trust.

1.31   **Disclosure Statement** means the disclosure statement for the Plan approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

1.32   **Disclosure Statement Order** means the Final Order of the Bankruptcy Court approving the Disclosure Statement in accordance with section 1125 of the Bankruptcy Code.

1.33   **Disputed** means, with reference to (a) any Claim, proof of which was timely and properly filed, or an Administrative Expense Claim, which is disputed under the Plan or as to which a timely objection has been filed pursuant to section 502(d) or 510 of the Bankruptcy Code, or otherwise, and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 has been interposed, and which objection and/or request for estimation has not been withdrawn or determined by a Final Order; or (b) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed. A Claim that is Disputed by the Debtor or the Liquidation Trustee as to its amount only shall be deemed Allowed in the amount, if any, that the Debtor and/or the Liquidation Trustee admit is owed, if any, and Disputed as to the excess.

1.34   **Disputed Claim Amount** means the lesser of (a) the liquidated amount set forth in the proof of claim filed with the Bankruptcy Court relating to a Disputed Claim; (b) if the Bankruptcy Court has estimated such Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, the amount of a Disputed Claim as estimated by the Bankruptcy Court; and (c) the amount of such Disputed Claim allowed by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code, or zero dollars ($0.00) if such Disputed Claim is disallowed by the Bankruptcy Court pursuant to such section, in either case, regardless of whether the order or judgment allowing or disallowing such Claim has become a Final Order.

1.35   **Disputed Claims Reserve** means the reserve on account of Disputed Claims.

1.36   **Effective Date** means the first (1st) Business Day following the Confirmation Date upon which the conditions to effectiveness of the Plan set forth in Section 14.1 of the Plan have been satisfied or otherwise waived in accordance with Section 14.3 of the Plan.

1.37   **Entity** means a Person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the Office of the United States Trustee, or any other entity.

1.38   **Equity Interest** means any ownership interest in the Debtor.

1.39   **Executory Contracts** means all executory contracts and unexpired leases to which the Debtor is party, and under which each party thereto continues to have unperformed obligations, including, but not limited to, the obligation of any party to make payment or

4

perform services. The definition of "Executory Contracts" includes, but is not limited to, personal property leases, purchase and supply agreements, real property leases, supplier agreements, distribution agreements, operating agreements, and executory licenses of proprietary property.

1.40    **Final Order** means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor or, on and after the Effective Date, the Reorganized Debtor, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing shall have been denied or resulted in no modification of such order and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under section 502 of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be, but has not been, filed with respect to such order shall not cause such order not to be a Final Order.

1.41    **General Unsecured Claim** means an Unsecured Claim other than a claim entitled to priority under section 507 of the Bankruptcy Code.

1.42    **IRS** means the Internal Revenue Service, an agency of the United States Department of Treasury.

1.43    **JBS** means John B. Sanfilippo & Son, Inc.

1.44    **JBS Claim** means the General Unsecured Claim of JBS in the amount of $1,676,500.00 [Claim No. 12-1], as the same may be amended, supplemented, or otherwise modified.

1.45    **JBS Dryer** means the dryer cooler component of that certain 11 tpf Deluxe Almond Pasteurization System supplied pursuant to that that certain Purchase Order No. 159055, dated November 9, 2005, issued by JBS to the Debtor.

1.46    **JBS Payment** shall have the meaning ascribed to it in Section 4.5(b) of the Plan.

1.47    **JBS System** means all goods supplied pursuant to that that certain Purchase Order No. 159055, dated November 9, 2005, issued by JBS to the Debtor including, without limitation, that certain 11 tpf Deluxe Almond Pasteurization System, including without limitation all controls, cyclones, ducts, valves, fans and blowers, but specifically excluding the JBS Dryer.

1.48    **JBS Unit** means, and collectively refers to, the JBS Dryer and the JBS System.

5

1.49    **Lender Fees** means a Claim for services rendered or reimbursement of expenses incurred by or on behalf of the holder of any Allowed Secured Claim, including but not limited to those authorized to be paid pursuant to any cash collateral order or post-petition financing order.

1.50    **Lien** shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

1.51    **Liquidation Trust** means the Entity to be created on the Effective Date in accordance with Section 9.1 of the Plan and the Liquidation Trust Agreement for the benefit of holders of Allowed General Unsecured Claims (including the Prepetition Lender Deficiency Claim).

1.52    **Liquidation Trust Agreement** means the trust agreement, substantially in the form attached to the Plan Supplement.

1.53    **Liquidation Trust Assets** means the Liquidation Trust Claims, the Net Plan Cash, and any other assets acquired by the Liquidation Trust after the Effective Date or pursuant to the Plan, including all products and proceeds of the foregoing.

1.54    **Liquidation Trust Advisory Committee** has the meaning ascribed to it in Section 9.2 of the Plan.

1.55    **Liquidation Trust Claims** means all Causes of Action asserted, or which may be asserted, by or on behalf of the Debtor or the Debtor's estate, in respect of matters arising prior to the Petition Date, including without limitation Avoidance Actions, but specifically excluding (i) other Causes of Action arising in the ordinary course of the Debtor's business (*e.g.* warranty claims on purchased goods or claims for breach of contract); (ii) Released Claims; and (iii) the Retained Causes of Action.

1.56    **Liquidation Trust Funds** means the proceeds of Liquidation Trust Assets.

1.57    **Liquidation Trust Interests** means the beneficial interests in the Liquidation Trust; provided, however, that no certificates or other written evidence of ownership of such interests will be issued.

1.58    **Liquidation Trustee** means the Entity, solely in its capacity as Liquidation Trustee, approved by the Bankruptcy Court at the Confirmation Hearing to administer the Liquidation Trust in accordance with the terms and provisions of Article IX hereof and the Liquidation Trust Agreement.

1.59    **Net Plan Cash** means the balance of Plan Cash remaining after payment in full of all Plan Cash Claims.

1.60    **New Equity** means the 100% equity interest in the Reorganized Debtor.

1.61    **New Shares** means one hundred (100) non-certificated shares, representing the New Equity.

6

1.62    **Other Estate Professionals** means all professionals, except the Debtor's Professionals, employed in the Chapter 11 Case pursuant to sections 327 or 328 of the Bankruptcy Code

1.63    **Other Secured Claim** means any Secured Claim other than a Prepetition Lender Secured Claim.

1.64    **Paramount** means Paramount Farms International, LLC f/k/a Paramount Farms, Inc.

1.65    **Paramount Claim** means the Claim of Paramount in the amount of $5,276,934.02 [Claim No. 11-1], as the same may be amended, supplemented, or otherwise modified.

1.66    **Paramount Payment** shall have the meaning ascribed to it in Section 4.3(b) of the Plan.

1.67    **Paramount Secured Claim** means the Paramount Claim, to the extent that it is a Secured Claim.

1.68    **Person** shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

1.69    **Petition Date** means September 28, 2010.

1.70    **Plan** means this Joint Plan of Reorganization of Ventilex USA Inc. and the Official Committee of Unsecured Creditors Dated as of April 1, 2011, as Modified (including, without limitation, exhibits, supplements, appendices, and schedules hereto), either in its present form or as the same may be altered, amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

1.71    **Plan Cash** means Cash to be paid by the Plan Sponsor to the Reorganized Debtor equal to the sum of (a) $1,050,000.00 plus (b) the excess, if any, of $400,000.00 over the amount of the DIP Loan Balance on the Effective Date.

1.72    **Plan Cash Claims** means, and collectively refers to, Allowed Administrative Expense Claims, Allowed Professional Compensation and Reimbursement Claims, Allowed Priority Tax Claims, and the Allowed Priority Non-Tax Claims, to the extent that they are paid from Plan Cash pursuant to the Plan.

1.73    **Plan Instruments** has the meaning ascribed to it in section 4.2(b) of the Plan.

1.74    **Plan Sponsor** means BV, in its capacity as sponsor of the Plan.

1.75    **Plan Sponsor Additional Capital Contribution** means Cash in the amount of $170,000.00 to be contributed to the Reorganized Debtor by the Plan Sponsor.

1.76    **Plan Supplement** shall have the meaning ascribed to it in Section 19.3 of the Plan.

7

1.77   **Post-Petition Lender Claim** means the claim of BV in the amount of the DIP Loan Balance.

1.78   **Prepetition Credit Agreement** means and collectively refers to all loan agreements, notes, security agreements, facility agreements, line letter agreements, or other instruments to which the Debtor, as borrower, and BV, as lender, were parties as of the Petition Date.

1.79   **Prepetition Lender** means BV, in its capacity as lender under the Prepetition Credit Agreement.

1.80   **Prepetition Lender Claim** means the claim of the Prepetition Lender under the Prepetition Credit Agreement as of the Petition Date in the aggregate amount of $1,896,164.74 [Claim No. 15-1], as the same may be amended, supplemented, or otherwise modified.

1.81   **Prepetition Lender Deficiency Claim** means the excess, if any, of the Prepetition Lender Claim over the Prepetition Lender Secured Claim.

1.82   **Prepetition Lender Secured Claim** means the Prepetition Lender Claim, to the extent that it is a Secured Claim.

1.83   **Priority Non-Tax Claim** means any Claim against the Debtor, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment in accordance with sections 507(a)(4), (5), (7), or (9) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.84   **Priority Tax Claim** means any Claim of a governmental unit against the Debtor entitled to priority of payment pursuant to sections 502(1) and 507(a)(8) of the Bankruptcy Code.

1.85   **Pro Rata Share** means the proportion that a Claim bears to the sum of all Claims within such Class or group of Classes for which an allocation is being determined.

1.86   **Professional Compensation and Reimbursement Claim** means a Claim for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 503(b)(2), (3), (4), or (5) of the Bankruptcy Code.

1.87   **Record Date** means the date or dates established by the Bankruptcy Court in the Confirmation Order for the purpose of determining the holders of Allowed Claims entitled to receive distributions pursuant to the Plan.

1.88   **Released Claims** shall have the meaning ascribed to it in Section 16.11 of the Plan.

1.89   **Reorganized Debtor** means the Debtor on and after the Effective Date.

1.90   **Restructuring Transactions** means the transactions set forth in Section 6.1 of the Plan.

8

1.91    **Retained Causes of Action** means the Dijkman Claims, TEMA Claims, Riviana Claims, Silver Creek Litigation Claims, and all other Causes of Action that are not Liquidation Trust Claims.

1.92    **Riviana Claims** means and collectively refers to any and all rights, claims, causes of action, and remedies of the Debtor against or with respect to Riviana Foods Inc. and/or any of its affiliates or subsidiaries and/or any of its current or former principal, officer, director, shareholder, partner, member, agent, representative, or employee of Riviana Foods Inc.

1.93    **Schedules** means the schedules of assets and liabilities, the lists of holders of Equity Interests, and the statements of financial affairs filed by the Debtor in the Chapter 11 Case in accordance with section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Forms of the Bankruptcy Rules, as such schedules, lists, and statements have been or may be amended or supplemented on or prior to the Confirmation Date.

1.94    **Secured Claim** means a Claim against the Debtor (a) secured by a Lien on Collateral or (b) subject to setoff under sections 553, 555, 556, 559, 560, and 561 of the Bankruptcy Code, in each case to the extent of the value of the Collateral or to the extent of the amount subject to setoff, as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code or as otherwise agreed to, in writing, by the Debtor or the Reorganized Debtor, as the case may be, and the holder of such Claim; provided, however, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured Claim unless, in any such case, the Class of which such Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.95    **Silver Creek** means SCMFS LLC a Texas LLC dba Silver Creek Frac Sand, LLC.

1.96    **Silver Creek Litigation Claims** means any and all rights, claims, causes of action, or remedies of the Debtor against Silver Creek.

1.97    **Silver Creek Claim** means the General Unsecured Claim of Silver Creek in the amount of $505,994.00 [Claim Nos. 16 & 19], as the same may be amended, supplemented, or otherwise modified.

1.98    **Silver Creek Credit** shall have the meaning ascribed to it in Section 4.6(b) of the Plan.

1.99    **Surplus Liquidation Trust Funds** means the Liquidation Trust Funds remaining after payment in full of (a) fees, costs, and expenses of administering the Liquidation Trust, including without limitation, any and all taxes and Liquidation Trustee fees, costs, and expenses; and (b) all Allowed Class 7 Claims.

1.100    **Tax Code** means the Internal Revenue Code of 1986, as amended from time to time.

9

1.101  **TEMA Claims** means and collectively refers to any and all rights, claims, causes of action, and remedies of the Debtor against or with respect to TEMA Holding N.W. and/or any of its affiliates or subsidiaries including, without limitation, TEMA Systems, Inc. and TEMA Process B.V. and any current or former principal, officer, director, shareholder, partner, member, agent, representative, or employee of any of the foregoing.

1.102  **Trust Termination Date** shall have the meaning ascribed to it in Section 9.14 of the Plan.

1.103  **Unsecured Claim** means any Claim against the Debtor, other than an Administrative Expense Claim, a Secured Claim, and a Professional Compensation and Reimbursement Claim.  Unsecured Claim includes, without limitation, any Prepetition Lender Deficiency Claim.

### ARTICLE II.

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL COMPENSATION AND REIMBURSEMENT CLAIMS, AND PRIORITY TAX CLAIMS

**2.1**  **Administrative Expense Claims**.

Allowed Administrative Expense Claims shall be paid by the Reorganized Debtor or Disbursement Agreement in full (a) in Plan Cash on the earliest of (i) the Effective Date; or (ii) thirty (30) days after an Administrative Expense Claim becomes Allowed; or (b) pursuant to terms and conditions mutually agreeable to the Reorganized Debtor and the holder of the subject Allowed Administrative Expense Claim.

**2.2**  **Professional Compensation and Reimbursement Claims**.

**Generally.**  All Entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 503(b)(2), (3), (4), or (5) of the Bankruptcy Code shall file their respective applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is sixty (60) days after notice of the Effective Date is served upon all known creditors and interested parties in the Chapter 11 Case, or such other date as may be fixed by the Bankruptcy Court.  Objections to Professional Compensation and Reimbursement Claims shall be filed no later than twenty-one (21) days after such an application or request for such Claim is filed with the Bankruptcy Court.

**Debtor's Professionals.**  Allowed Professional Compensation and Reimbursement Claims of the Debtor's Professionals shall be paid by the Reorganized Debtor or Disbursement Agent in full (a) in Plan Cash on the earliest of (i) the Effective Date, or as soon thereafter as reasonably practicable; or (ii) thirty (30) days after the subject Professional Compensation and Reimbursement Claim of the Debtor's Professional becomes Allowed; or (b) pursuant to terms, and subject to conditions, agreeable to the holder of the subject Allowed Professional Compensation and Reimbursement Claim.

10

**Other Estate Professionals.** Allowed Professional Compensation and Reimbursement Claims of the Other Estate Professionals shall be paid by the Reorganized Debtor or the Disbursement Agent in full (a) in Plan Cash on the earliest of (i) the Effective Date, or as soon thereafter as reasonably practicable; or (ii) thirty (30) days after the subject Professional Compensation and Reimbursement Claim of the Other Estate Professional becomes Allowed; or (b) pursuant to terms, and subject to conditions, agreeable to the holder of the subject Allowed Professional Compensation and Reimbursement Claim.

### 2.3    Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive (i) Plan Cash from the Reorganized Debtor in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as reasonably practicable; (ii) at the Reorganized Debtor's option, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, equal semi-annual Cash payments from the Reorganized Debtor in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate equal to 3.0% per annum, over a period ending not later than five (5) years after the Petition Date; or (iii) upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments from the Reorganized Debtor having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims (other than Administrative Expense Claims, Professional Compensation and Reimbursement Claims, and Priority Tax Claims) and Equity Interests are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Priority Non-Tax | Unimpaired | Deemed to Accept |
| 2 | Prepetition Lender Claim | Impaired | Yes |
| 3 | Paramount Secured Claim | Impaired | Yes |
| 4 | Cal Nut Claim | Impaired | Yes |
| 5 | JBS Claim | Impaired | Yes |

11

4049573.4

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 6 | Silver Creek Claim | Impaired | Yes |
| 7 | General Unsecured Claims | Impaired | Yes |
| 8 | Equity Interests | Impaired | Deemed to Reject |

## ARTICLE IV.

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1 Class 1: Priority Non-Tax Claims.

(a)     Impairment and Voting.   Class 1 Priority Non-Tax Claims are unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)     Distributions.   Unless otherwise mutually agreed upon by the holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtor, each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, Plan Cash from the Reorganized Debtor in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable.

### 4.2 Class 2: Prepetition Lender Claim.

(a)     Impairment and Voting.   Class 2 Prepetition Secured Lender Claim is impaired by the Plan.  The Prepetition Lender is entitled to vote to accept or reject the Plan.

(b)     Distributions.   The Prepetition Lender Claim is hereby Allowed as follows:

(i)     Prepetition Lender Secured Claim.   The Prepetition Lender Secured Claim is hereby Allowed in the amount of $833,884.36, which amount shall be paid over sixty (60) months with fixed interest on the unpaid balance at prime rate per annum, the first of which payments shall be due on or before the fifteenth (15th) day of the calendar month immediately following the month in which the Effective Date occurs.  The Reorganized Debtor's obligation to pay the Allowed Prepetition Lender Secured Claim shall be secured by a first-priority security interest in all of the Reorganized Debtor's assets.   The Reorganized Debtor shall execute and deliver to the Prepetition Lender all appropriate notes, security interests, mortgages, financing statements, or other instruments or agreements necessary to effectuate the transactions set forth in

this section (collectively, "**Plan Instruments**").  Copies of the Plan Instruments shall be included in the Plan Supplement.

(ii)     Prepetition Lender Deficiency Claim.  The Prepetition Lender Deficiency Claim is hereby Allowed in the amount of $1,062,280.38, which Allowed Prepetition Lender Deficiency Claim shall be deemed converted into equity in the Reorganized Debtor as of the Effective Date.

**4.3     Classes 3: Paramount Secured Claim.**

(a)     Impairment and Voting.  Class 3 Paramount Secured Claim is impaired by the Plan.  Paramount is entitled to vote to accept or reject the Plan.

(b)     Distributions.  The Paramount Secured Claim shall be Allowed on the Effective Date.  In full and final satisfaction of the Allowed Paramount Secured Claim, Paramount shall receive (1) $1,000,000.00 in Plan Cash (the "**Paramount Payment**"); and (2) a twenty-five percent (25%) interest in the Surplus Liquidation Trust Funds.  The Paramount Payment shall be actually received by Paramount within five (5) business days after the Effective Date.

(c)     Mutual Waiver and Release.  Upon Paramount's actual receipt of the Paramount Payment, Paramount, on the one hand, and the Debtor, the Debtor's estate, the Liquidation Trust, and the Reorganized Debtor, on the other hand, shall be deemed to have mutually waived and released any and all claims and causes of action, at law or in equity, known or unknown, fixed or contingent, existing as of the Effective Date; provided, however, that such mutual waiver and release shall not extend to any and all rights, claims, or causes of action under this Plan, under the Confirmation Order, or with respect to BV as set forth more fully in Section 16.11 hereof.

**4.4     Class 4: Cal Nut Claim.**

(a)     Impairment and Voting.  Class 4 Cal Nut Claim is impaired by the Plan. Cal Nut is entitled to vote to accept or reject the Plan.

(b)     Distributions.  The Cal Nut Claim shall be Allowed on the Effective Date.  In full and final satisfaction of the Allowed Cal Nut Claim, upon JBS's actual receipt of the JBS Payment, JBS shall be deemed to have transferred all legal and equitable right, title, and interest in the JBS Unit to Cal Nut.  Such conveyance of the JBS Unit shall be on an as-is, where-is, with-all-faults basis, and without warranty of any kind from the Debtor, Reorganized Debtor, or Plan Sponsor.  In addition to the foregoing distributions, Cal Nut shall also receive, in full and final satisfaction of the Allowed Cal Nut Claim, a twenty-five percent (25%) interest in the Surplus Liquidation Trust Funds

(c)     Recovery of JBS System.  Cal Nut shall (i) be solely responsible for physically retrieving the JBS Unit from JBS and paying in full all associated shipping, freight, and transportation fees and costs; and (ii) assume all risk of loss or non-delivery of the JBS System.  The Debtor, Reorganized Debtor, and Plan Sponsor shall be under no obligation to test, install, service, or refurbish the JBS Unit, except as may be otherwise agreed by the Reorganized Debtor and/or Plan Sponsor after the Effective Date.  The Reorganized Debtor and

13

JBS shall execute all documents or instruments reasonably necessary in order to effectuate the transfer of the JBS Unit to Cal Nut in accordance with the Plan. Cal Nut shall recover the JBS Unit within fourteen (14) days after JBS's actual receipt of the JBS Payment, unless JBS and Cal Nut mutually agree to deadline different deadline.

(d)     Mutual Waiver and Release.  Upon JBS's actual receipt of the JBS Payment, Cal Nut, on the one hand, and the Debtor, the Debtor's estate, the Liquidation Trust, and the Reorganized Debtor, on the other hand, shall be deemed to have mutually waived and released any other or further claims and causes of action, at law or in equity, known or unknown, fixed or contingent, against the Debtor, the Debtor's estate, the Reorganized Debtor, or the Plan Sponsor existing as of the Effective Date; provided, however, that such mutual waiver and release shall not extend to any and all rights, claims, or causes of action under this Plan or the Confirmation Order.

### 4.5     Class 5: JBS Claim.

(a)     Impairment and Voting.  Class 5 JBS Claim is impaired by the Plan. JBS is entitled to vote to accept or reject the Plan.

(b)     Distributions.  The JBS Claim shall be Allowed as of the Effective Date. In full and final satisfaction of the Allowed JBS Claim, JBS shall receive (1) $170,000.00 in Cash from the Reorganized Debtor (the "**JBS Payment**"); and (2) a twenty-five percent (25%) interest in the Surplus Liquidation Trust Funds.  The JBS Payment shall be actually received by JBS within five (5) business days after the Effective Date.

(c)     Mechanics of Transfers.  Upon actual receipt of the JBS Payment, JBS shall transfer all legal and equitable right, title, and interest in the JBS Unit to Cal Nut free and clear of any and all liens, claims, interests, and encumbrances.  JBS shall be responsible for all reasonable care, maintenance, and preservation of the JBS Unit, until it is recovered by Cal Nut in accordance with Section 4.4(b) of the Plan.

(d)     Mutual Waiver and Release.  Upon JBS's actual receipt of the JBS Payment, JBS, on the one hand, and the Debtor, the Debtor's estate, the Liquidation Trust, and the Reorganized Debtor, on the other hand, shall be deemed to have mutually waived and released any other or further claims and causes of action, at law or in equity, known or unknown, fixed or contingent, against the Debtor, the Debtor's estate, the Reorganized Debtor, or the Plan Sponsor existing as of the Effective Date; provided, however, that such mutual waiver and release shall not extend to any and all rights, claims, or causes of action under this Plan or the Confirmation Order.

### 4.6     Class 6: Silver Creek Claim.

(a)     Impairment and Voting.  Class 6 Silver Creek Claim is impaired by the Plan.  Silver Creek is entitled to vote to accept or reject the Plan.

(b)     Distributions.  The Silver Creek Claim shall be Allowed as of the Effective Date.  In full and final satisfaction of the Allowed Silver Creek Claim, Silver Creek shall receive (1) a twenty-five percent (25%) interest in the Surplus Liquidation Trust Funds; and (2) a credit, in the amount of $125,000.00 (the "**Silver Creek Credit**"), which may be (i)

14

applied, in whole or in part, by Silver Creek to future purchases of goods and/or services from the Reorganized Debtor; or (ii) sold, transferred, or otherwise conveyed, in whole or in part, by Silver Creek to third parties, with the prior written consent of the Reorganized Debtor, which consent shall not be unreasonably withheld; provided, however, that any partial sale, transfer, or conveyance of the Silver Creek Credit shall not be in an amount less than $25,000.00. Unless otherwise agreed in writing by the Reorganized Debtor, any unapplied amount of the Silver Creek Credit automatically shall be deemed expired, null, and void as of December 31, 2014.

(c)     Conditional Mutual Waiver and Release.  On the Effective Date, Silver Creek shall be deemed to have waived and released any and all claims and causes of action, at law or in equity, known or unknown, fixed or contingent, against the Debtor, the Debtor's estate, the Reorganized Debtor, or the Plan Sponsor existing as of the Effective Date; provided, however, that such waiver and release shall not extend to any and all rights, claims, or causes of action under this Plan or the Confirmation Order.  If Silver Creek votes in favor of the Plan, and otherwise supports confirmation of the Plan, the waiver and release set forth in this subsection shall be deemed to be mutual.

### 4.7    Class 7: General Unsecured Claims.

(a)     Impairment and Voting.  Class 7 General Unsecured Claims are impaired by the Plan.  Each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)     Distributions.  As soon as practicable after the later to occur of the Effective Date and the day on which a General Unsecured Claim becomes an Allowed General Unsecured Claim, the holders of Allowed General Unsecured Claims shall receive Liquidation Trust Interests in the amount of their Pro Rata Share of the Liquidation Trust Assets, entitling them to a Pro Rata Share of Plan Trust Funds for distribution in accordance with Article XI of the Plan and the Liquidation Trust Agreement.

### 4.8    Class 8: Equity Interests.

(a)     Impairment and Voting.  Class 8 Equity Interests are impaired and deemed to reject the Plan.

(b)     Treatment.  On the Effective Date all existing prepetition Equity Interests shall be deemed canceled and extinguished.  Holders of Equity Interests shall not receive any distribution under the Plan.

### ARTICLE V.

### ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS

### 5.1    Impaired Classes to Vote on Plan.

Each holder of a Claim or Equity Interest in an impaired Class, not otherwise deemed to have rejected the Plan, shall be entitled to vote separately to accept or reject the Plan. The Claims included in Classes 2 through 7 are impaired and, therefore, are entitled to vote to

15

accept or reject the Plan. The Class of Equity Interests (Class 8) is deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

### 5.2 Acceptance by Class of Creditors.

An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

### 5.3 Cramdown.

In the event that any impaired Class of Claims or Equity Interests shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## ARTICLE VI.

## IMPLEMENTATION OF THE PLAN

### 6.1 Restructuring Transactions.

On the Effective Date, the following transactions shall be effectuated in the following order:

(a)     Plan Cash Payment by Plan Sponsor.  The Plan Sponsor shall pay the Plan Cash to the Reorganized Debtor, which Plan Cash shall be held by the Reorganized Debtor in a segregated, interest-bearing account until the Net Plan Cash is transferred to the Liquidation Trust in accordance with Section 9.3 of the Plan.

(b)     Plan Sponsor Additional Capital Contribution.  The Plan Sponsor shall make the Plan Sponsor Additional Capital Contribution in exchange for New Equity.

(c)     Conversion of DIP Loan Balance Into New Equity.  The DIP Loan Balance shall be deemed converted into New Equity in full and final satisfaction of the Post-Petition Lender Claim.

(d)     Conversion of Allowed Prepetition Lender Claim Into New Equity.  The Allowed Prepetition Lender Deficiency Claim shall be deemed converted into New Equity in full and final satisfaction of the Allowed Prepetition Lender Deficiency Claim.

(e)     Issuance of New Shares.  The Reorganized Debtor shall issue the New Shares to the Plan Sponsor.

(f)     Modified Trademark License Agreement.  The Reorganized Debtor and the Plan Sponsor shall modify that certain Trademark License Agreement dated July 10, 2010, between the Debtor and BV, in order to provide that the Term (as defined therein) shall be no less than one (1) calendar year beginning on the Effective Date.

16

### 6.2 **Section 1145 Securities**.

To the extent provided in section 1145 of the Bankruptcy Code and under applicable non-bankruptcy law, the issuance under the Plan of the New Shares will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

### 6.3 **Corporate Action**.

Upon the Effective Date, the following transactions shall be deemed to occur:

(a) _General_. All actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) the execution and entry into the Liquidation Trust Agreement; (ii) the execution and entry into each of the Restructuring Transactions; and (iii) all other actions contemplated by the Plan. All matters provided for in the Plan involving the structure of the Debtor or the Reorganized Debtor, and any action required by the Debtor or the Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtor, the Reorganized Debtor, or the Plan Sponsor. On or prior (as applicable) to the Effective Date, the appropriate officers of the Debtor, the Reorganized Debtor, or the Plan Sponsor, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor.

(b) _Amendment of Debtor's Certificates and Agreements_. The Reorganized Debtor's certificate of incorporation, articles of incorporation, and bylaws shall be amended and filed (only as required) with the appropriate secretary of state's office on the Effective Date or as soon thereafter as is reasonably practicable. All necessary action will be taken in order to prohibit the issuance of non-voting equity securities of the Debtor to the extent required by Bankruptcy Code Section 1123; provided that any such prohibition shall apply only for so long as Bankruptcy Code Section 1123 is in effect and applicable to the Debtor and will have no force and effect beyond that required by Bankruptcy Code Section 1123. Copies of the proposed form of the amendments to the Reorganized Debtor's certificates of incorporation or formation and the articles of incorporation or organization shall be included in the Plan Supplement.

### 6.4 **Existence**.

Except as otherwise provided in the Plan, the Reorganized Debtor shall continue to exist after the Effective Date with all the powers of a corporation pursuant to the applicable law in the jurisdiction in which the Reorganized Debtor is incorporated or formed and pursuant to the certificate of incorporation and bylaws in effect on the Effective Date, except to the extent such certificate of incorporation and bylaws are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

4049573.4

### 6.5    Vesting of Assets in the Reorganized Debtor.

On the Effective Date, all remaining property in the Debtor's estate, the Liquidation Trust Assets, and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor or the Liquidation Trust, as the case may be, free and clear of all Liens. On and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Retained Causes of Action or interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### 6.6    Cancellation of Debt and Equity Securities and Related Obligations.

Except (a) as otherwise expressly provided in the Plan, (b) with respect to Executory Contracts that have been assumed by the Debtor, (c) for purposes of evidencing a right to distributions under the Plan, or (d) with respect to any Claim that is Allowed under the Plan, on the Effective Date, any instruments or documents evidencing any Claims or Equity Interests shall be deemed automatically cancelled and deemed surrendered without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtor under the agreements, instruments, and other documents, indentures, and certificates of designations governing such Claims and Equity Interests, as the case may be, shall be discharged; provided, however, that such instruments or documents shall continue in effect solely for the purpose of (x) allowing the holders of such Claims to receive their distributions under the Plan and (y) allowing the Liquidation Trustee to make such distributions to be made on account of such Allowed Claims.

### 6.7    Effectuating Documents and Further Transactions.

On and after the Effective Date, the Reorganized Debtor is authorized to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents, including without limitation the Plan Instruments, and take such actions as may be necessary or appropriate in order to effectuate, implement, and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan, including without limitation the New Shares, in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

## ARTICLE VII.

## PRESERVATION AND PROSECUTION OF CAUSES OF ACTION
## HELD BY THE DEBTOR

### 7.1    Preservation and Prosecution of Causes of Action.

In accordance with section 1123(b) of the Bankruptcy Code, (a) the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action; and (b) the Liquidation Trust may enforce all rights to commence and pursue, as appropriate, any and all Liquidation Trust Claims, and the Reorganized Debtor's and Liquidation Trust's rights to commence, prosecute, or settle their

18

Retained Causes of Action and Liquidation Trust Claims, respectively, shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue its Retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or Liquidation Trustee, as applicable, will not pursue any and all available Causes of Action against them. The Reorganized Debtor and Liquidation Trust expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided herein.

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Reorganized Debtor and the Liquidation Trustee, as the case may be, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation Order.

The Reorganized Debtor and Liquidation Trust reserve and shall retain the Retained Causes of Action and Liquidation Trust Claims, respectively, notwithstanding the rejection of any Executory Contract during the Chapter 11 Case or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor or the Liquidation Trust, as the case may be. As of the Effective Date, the Reorganized Debtor shall have assigned the Liquidation Trust Claims to the Liquidation Trust. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VIII.

## PROVISION FOR TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN

### 8.1     Objections to Claims; Prosecution of Disputed Claims.

(a)     Claim Objections by Liquidation Trustee.  The Liquidation Trustee shall have the sole power and authority to object to the allowance of all Claims not otherwise allowed under the Plan, which, if Allowed, are payable by the Liquidation Trust.

(b)     Claim Objections by Reorganized Debtor.  The Reorganized Debtor shall have the sole power and authority to object to the allowance of all Claims not otherwise allowed under the Plan, which, if Allowed, are payable by the Reorganized Debtor; provided, however, that any interested party may object to the allowance of Professional Compensation and Reimbursement Claims.

(c)     Deadline for Claim Objections.  Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor and/or the Liquidation Trustee shall file and serve

19

all objections to Claims as soon as practicable, but, in each instance, not later than sixty (60) days following the Effective Date or such later date as may be approved by the Bankruptcy Court.

### 8.2   No Distributions Pending Allowance.

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 8.3   Estimation of Claims.

Unless otherwise limited by Final Order of the Bankruptcy Court, the Reorganized Debtor and/or the Liquidation Trustee may at any time request that the Bankruptcy Court estimate for final distribution purposes any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor, the Reorganized Debtor, or the Liquidation Trustee previously objected to such Claim. The Bankruptcy Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Unless otherwise provided in an order of the Bankruptcy Court, in the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court; provided, however, that if the estimate constitutes the maximum limitation on such Claim, the Debtor, the Reorganized Debtor, or the Liquidation Trustee, as the case may be, may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim, and; provided, further, that the foregoing is not intended to limit the rights granted by section 502 of the Bankruptcy Code.

### 8.4   Payments and Distributions on Disputed Claims.

(a)     Disputed Claims Reserve. From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by Final Order, the Disbursement Agent shall reserve and hold in escrow for the benefit of each holder of a Disputed Claim, including any gains, interest or income attributable thereto, in an amount equal to distributions which would have been made to the holder of such Disputed Claim if it were an Allowed Claim equal to the least of (i) the Disputed Claim Amount; (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim ultimately may become an Allowed Claim; or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Disbursement Agent. Cash reserved and held for the benefit of a holder of a Disputed Claim shall be treated as a payment and reduction on account of such Disputed Claim for purposes of computing any additional amounts to be paid in Cash in the event the Disputed Claim ultimately becomes an Allowed Claim. In the event that a Disputed Claim is not Allowed, in whole or in part, the holders of Allowed Claims in the same Class as the holder of the Claim that is not Allowed shall receive their Pro Rata Share of any Cash reserved on account of the Claim that is not Allowed. Such Cash and any gains, interest,

20

or income thereon reserved for the benefit of holders of Disputed Claims shall be either (x) held by the Disbursement Agent in an interest-bearing account; or (y) invested in interest-bearing obligations issued and/or guaranteed by the United States Government, and having (in either case) a maturity of not more than thirty (30) days, for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan. No payments or distributions shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof by Final Order.

(b)     <u>Allowance of Disputed Claims</u>.  At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Disbursement Agent shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan, together with any interest which has accrued on the amount of Cash so reserved (net of any expenses, including any taxes on the escrow, relating thereto), but only to the extent that such interest is attributable to the amount of the Allowed Claim.  Such distribution, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing or disallowing such Disputed Claim becomes a Final Order but in no event more than thirty (30) days thereafter.

(c)     <u>Tax Treatment of Escrow</u>.  Subject to the receipt of contrary guidance from the IRS or a court of competent jurisdiction (including the receipt by the Disbursement Agent of a private letter ruling requested by the Disbursement Agent, or the receipt of an adverse determination by the IRS upon audit if not contested by the Disbursement Agent, or a condition imposed by the IRS in connection with a private letter ruling requested by the Debtor), the Disbursement Agent shall (i) treat the escrow as one or more discrete trusts (which may be composed of separate and independent shares) for federal income tax purposes in accordance with the trust provisions of the Tax Code (sections 641, *et seq*.) and (ii) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All holders of Allowed Claims shall report, for tax purposes, consistent with the foregoing.

## ARTICLE IX.

## THE LIQUIDATION TRUST

### 9.1     <u>Establishment of the Liquidation Trust</u>.

On the Effective Date, the Debtor or the Reorganized Debtor, as the case may be, on its own behalf and on behalf of the holders of Allowed General Unsecured Claims (including Prepetition Lender Deficiency Claim) shall execute the Liquidation Trust Agreement and shall take all other steps necessary to establish the Liquidation Trust in accordance with and pursuant to the terms of the Plan.

### 9.2     <u>Trust Governance</u>.

The Trust shall have a governing body consisting of three (3) members selected by the Committee (the "<u>Liquidation Trust Advisory Committee</u>"). The Committee shall have the right to choose the Liquidation Trustee, which Liquidation Trustee may be a member of the Committee and must be reasonably acceptable to the Debtor. If a dispute arises regarding the

appointment of the Liquidation Trustee, the Bankruptcy Court shall retain jurisdiction to resolve such dispute.

**9.3**     **Initial Funding of the Trust**.

On or before the fifth (5th) Business Day after the day on which all Plan Cash Claims are paid in full, the Reorganized Debtor shall pay the Net Plan Cash to the Liquidation Trust.

**9.4**     **Trust Distributions**.

The Liquidation Trustee will make distributions of Liquidation Trust Funds to holders of Liquidation Trust Interests as provided herein and in the Liquidation Trust Agreement; provided, however, that the none of Paramount, Cal Nut, JBS, or Silver Creek shall participate in any distribution of Liquidation Trust Funds, except to the extent that there are Surplus Liquidation Trust Funds, and then only to the extent of their respective twenty-five percent (25%) interest in Surplus Liquidation Trust Funds.

**9.5**     **Transfer of all Other Liquidation Trust Assets to the Liquidation Trust**.

Except with respect to Retained Causes of Action, which vest in the Reorganized Debtor as of the Effective Date, all Liquidation Trust Assets including, without limitation, Causes of Action not released by the Plan, shall be transferred to the Liquidation Trust. The Liquidation Trust shall be authorized to prosecute all Liquidation Trust Claims transferred to it, including Avoidance Actions, as deemed appropriate under the Bankruptcy Code or applicable state or federal law.  In connection with any Causes of Action transferred to the Liquidation Trust, the Liquidation Trust may be plaintiff in such actions or, to the extent that actions are instituted prior to the Effective Date of the Plan, the Liquidation Trust will have the right to substitute as plaintiff in such actions.  The proceeds of such actions shall be for the sole benefit of the holders of Allowed General Unsecured Claims.

The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be made, as provided herein, for the benefit of the holders of Liquidation Trust Interests.  Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidation Trust Assets to the Liquidation Trust shall not affect the mutuality of obligations which otherwise may have existed prior to the effectuation of such transfer. To the extent that any Liquidation Trust Assets cannot be transferred to the Liquidation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Liquidation Trust Assets shall be deemed to have been retained by the Reorganized Debtor, and the Liquidation Trustee shall be deemed to have been designated as a representative of the Reorganized Debtor pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Liquidation Trust Assets on behalf of the Reorganized Debtor. Notwithstanding the foregoing, all net proceeds of such Liquidation Trust Assets shall be transferred to the Liquidation Trust to be distributed to holders of the Liquidation Trust Interests consistent with the terms of the Plan and the Liquidation Trust Agreement.

### 9.6 Purpose of the Liquidation Trust.

The Liquidation Trust shall be established for the sole purpose of liquidating the Liquidation Trust Assets, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

### 9.7 Funding Expenses of the Liquidation Trust.

Upon the transfer of the Liquidation Trust Assets to the Liquidation Trust, none of the Debtor, Reorganized Debtor, or Plan Sponsor shall have any further obligation to provide any funding or assets whatsoever with respect to the Liquidation Trust. All fees, costs, and expenses of the Liquidation Trust or Liquidation Trustee, including without limitation all professional fees, costs, and expenses, shall be paid out of the Liquidation Trust Assets.

### 9.8 Litigation; Responsibilities of the Liquidation Trustee.

In addition to the responsibilities set forth elsewhere herein and in the Liquidation Trust Agreement, the Liquidation Trustee shall have the following responsibilities:

(a) The Liquidation Trustee, upon direction by the Liquidation Trust Advisory Committee, and in the exercise of their collective reasonable business judgment, shall, in an expeditious but orderly manner, liquidate and convert to Cash the assets of the Liquidation Trust, make timely distributions, and not unduly prolong the duration of the Liquidation Trust. The liquidation of the Liquidation Trust Assets may be accomplished either through the prosecution, compromise and settlement, abandonment, or dismissal of any or all claims, rights, or causes of action, or otherwise. The Liquidation Trustee, upon direction by the Liquidation Trust Advisory Committee, shall have the absolute right to pursue or not to pursue any and all Liquidation Trust Assets as it determines is in the best interests of the beneficiaries of the Liquidation Trust, and consistent with the purposes of the Liquidation Trust, and shall have no liability for the outcome of its decision except for any damages caused by willful misconduct or gross negligence. The Liquidation Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidation Trust Assets to Cash and shall be reimbursed in accordance with the provisions of the Liquidation Trust Agreement.

(b) No later than fifteen (15) days prior to the date of the initial hearing to confirm the Plan, the Liquidation Trustee shall be selected by the Committee, named in the Confirmation Order or in the Liquidation Trust Agreement, and have the power to (i) prosecute for the benefit of the Liquidation Trust all claims, rights, and causes of action transferred to the Liquidation Trust (whether such suits are brought in the name of the Liquidation Trust or otherwise); and (ii) otherwise perform the functions and take the actions provided for or permitted herein, or in any other agreement executed by the Liquidation Trustee pursuant to the Plan. Any and all proceeds generated from the Liquidation Trust Assets shall be the property of the Liquidation Trust.

### 9.9 Investment Powers.

The right and power of the Liquidation Trustee to invest assets transferred to the Liquidation Trust, the proceeds thereof, or any income earned by the Liquidation Trust, shall be limited to the right and power to invest such assets (pending any periodic distributions in

23

accordance with the Plan) in Cash Equivalents; provided, however, that (a) the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust, within the meaning of Treasury Regulation Section 301.7701-4(d), *may* be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, and (b) the Liquidation Trustee may expend the assets of the Liquidation Trust (i) as reasonably necessary to meet contingent liabilities and maintain the value of the assets of the Liquidation Trust during liquidation, (ii) to pay reasonable administrative expenses (including, but not limited to, any taxes imposed on the Liquidation Trust or reasonable fees and expenses in connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the Liquidation Trust (or to which the assets are otherwise subject) in accordance with the Plan or the Liquidation Trust Agreement.

### 9.10    **Annual Distribution; Withholding**.

The Liquidation Trustee shall distribute at least annually to the holders of Liquidation Trust Interests all net Cash income plus all net Cash proceeds from the liquidation of assets (including as Cash for this purpose, all Cash Equivalents); provided, however, that the Liquidation Trust may retain such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the assets of the Liquidation Trust during liquidation, (ii) to pay reasonable administrative expenses (including any taxes imposed on the Liquidation Trust or in respect of the assets of the Liquidation Trust), (iii) to satisfy other liabilities incurred or assumed by the Liquidation Trust (or to which the assets are otherwise subject) in accordance with the Plan or the Liquidation Trust Agreement, and (iv) as determined by the Liquidation Trust Advisory Committee, to fund the operations of the Liquidation Trust. All such distributions shall be pro rata based on the amount of Liquidation Trust Interests held by a holder compared with the aggregate amount of Liquidation Trust Interests outstanding, subject to the terms of the Plan and the Liquidation Trust Agreement. The Liquidation Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Liquidation Trustee's reasonable sole discretion, to be required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.

### 9.11    **Reporting Duties**.

(a)      **Federal Income Tax Treatment of the Liquidation Trust**.

(i)      Liquidation Trust Assets Treated as Owned by Creditors. For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Reorganized Debtor, the Liquidation Trustee, and the beneficiaries of the Liquidation Trust) shall treat the transfer of the Liquidation Trust Assets to the Liquidation Trust for the benefit of the beneficiaries of the Liquidation Trust, whether their Claims are Allowed on or after the Effective Date, as (a) a transfer of the Liquidation Trust Assets directly to those holders of Allowed Claims receiving Liquidation Trust Interests (other than to the extent allocable to Disputed Claims), followed by (b) the transfer by such Persons to the Liquidation Trust of the Liquidation Trust Assets in exchange for beneficial interests in the Liquidation Trust (and in respect of the Liquidation Trust Assets allocable to the Disputed Claims Reserve, as a transfer to the Disputed Claims

24

Reserve). Accordingly, those holders of Allowed Claims receiving any Liquidation Trust Interests shall be treated for federal income tax purposes as the grantors and owners of their respective shares of the Liquidation Trust Assets. The foregoing treatment also shall apply, to the extent permitted by applicable law, for state and local income tax purposes.

    (ii)    <u>Tax Reporting</u>.

    i.    The Liquidation Trustee shall file returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 10.15(a)(2)(i). The Liquidation Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any governmental unit.

    ii.    As soon as possible after the Effective Date, the Liquidation Trustee shall make a good-faith valuation of the Liquidation Trust Assets, subject to the valuation of the Liquidation Trust Advisory Committee, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including, without limitation, the Debtor, the Reorganized Debtor, the Liquidation Trustee, and the beneficiaries of the Liquidation Trust) for all federal income tax purposes.

    iii.    Allocations of Liquidation Trust taxable income among the holders of the Liquidation Trust Interests shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Liquidation Trust had distributed all of its other assets (valued at their tax book value) to the holders of the Liquidation Trust Interests, in such case up to the tax book value of the assets treated as contributed by such holders, adjusted for prior taxable income and loss taking into account all prior and concurrent distributions from the Liquidation Trust. Similarly, taxable loss of the Liquidation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidation Trust Assets. The tax book value of the Liquidation Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, and applicable tax regulations, and other applicable administrative and judicial authorities and pronouncements.

    iv.    The Liquidation Trustee shall be responsible for payments, out of the Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust or its assets.

    v.    The Liquidation Trustee may request an expedited determination of taxes of the Liquidation Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust or termination of the Liquidation Trust in accordance with Section 9.14 of the Plan.

### 9.12    **Trust Implementation**.

On the Effective Date, the Liquidation Trust shall be established and become effective for the benefit of the holders of Allowed General Unsecured Claims (including the Allowed Prepetition Lender Deficiency Claim and the Paramount Secured Claim, to the extent Allowed).

### 9.13    **Registry of Beneficial Interests**.

The Liquidation Trustee shall maintain a registry of the holders of Liquidation Trust Interests. The Liquidation Trust Interests may not be transferred or assigned, except by operation of law or by will or the laws of descent and distribution.

### 9.14    **Termination**.

The Liquidation Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date the ("**Trust Termination Date**"); provided, however, that, on or prior to the date that is ninety (90) days prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidation Trust if it is necessary to the liquidation of the Liquidation Trust Assets. Notwithstanding the foregoing, multiple extensions can be obtained so long as Bankruptcy Court approval is obtained at least 90 days prior to the expiration of each extended term. The Liquidation Trustee shall give sixty (60) days advance written notice to all known holders of Liquidation Trust Interests of (a) the Termination Date; and (b) any deadlines occasioned by the occurrence of the Trust Termination Date including, without limitation, the deadlines set forth in Sections 11.4 and 11.5 of the Plan.

## ARTICLE X.

## PROVISIONS FOR THE ESTABLISHMENT AND MAINTENANCE OF DISBURSEMENT ACCOUNT(S)

### 10.1    **Establishment of Disbursement Account(s) by Liquidation Trustee**.

On or prior to the Effective Date, or as soon thereafter as reasonably practicable, the Liquidation Trustee shall establish or cause to be established one or more segregated bank accounts in the name of the Liquidation Trustee, which accounts shall be trust accounts in which to deposit the Net Plan Cash and other Cash proceeds of Liquidation Trust Assets. Such accounts shall be for the benefit of payments to General Unsecured Creditors and such other disbursement requirements imposed on the Liquidation Trustee by the Plan or Liquidation Trust Agreement.

### 10.2    **Maintenance of Disbursement Account(s)**.

The Liquidation Trustee may only invest the Cash in Disbursement Account(s) in Cash Equivalents; provided, however, that sufficient liquidity shall be maintained in such account or accounts to make promptly when due the payments provided for in the Plan.

4049573.4

## ARTICLE XI.

## PROVISIONS REGARDING DISTRIBUTIONS UNDER THE PLAN

### 11.1   Distributions by Liquidation Trustee.

Subject to Section 9.10 of the Plan (Annual Distribution; Withholding), the Liquidation Trustee in consultation with the Liquidation Trust Advisory Committee, shall determine when a distribution should be made to holders of Allowed General Unsecured Claims. In making such determination, the Liquidation Trustee shall take into consideration the resolution of Disputed Claims, the administrative costs of such a distribution, the Cash held and/or proceeds received by the Liquidation Trust, pending and anticipated litigation, and the incurred and anticipated obligations of the Liquidation Trust. Notwithstanding the foregoing, except for good cause, the Liquidation Trustee shall make at least one (1) distribution per year measured from the Effective Date.

### 11.2   Manner of All Payment under the Plan.

Unless the Entity receiving a payment agrees otherwise, all payments shall be in Cash and made by check drawn on a domestic bank or by wire transfer from a domestic bank; provided, however, that no Cash payments shall be made to a holder of an Allowed Claim until such time as the amount payable thereto is equal to or greater than Ten Dollars ($10.00).

### 11.3   Delivery of Distributions.

Subject to the provisions of Bankruptcy Rule 9010, distributions and deliveries to holders of Allowed Claims shall be made at the address of such holders as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address set forth on proofs of claim filed by such holders, or at the last known address of such holders if no proof of claim is filed or if, after the Effective Date, the Reorganized Debtor or Liquidation Trustee have been notified in writing of a change of address.

### 11.4   Undeliverable Distributions.

(a)   Holding of Undeliverable Distributions. If any distribution to any holder of an Allowed Claim is returned to the Reorganized Debtor or Liquidation Trustee as undeliverable, no further distributions shall be made to such holder unless and until the Reorganized Debtor or Liquidation Trustee are notified, in writing, of such holder's then-current address. Undeliverable distributions shall remain in the possession of the Reorganized Debtor or Liquidation Trustee, as the case may be, until such time as a distribution becomes deliverable. All Entities ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in the Plan shall require the Reorganized Debtor or Liquidation Trustee to attempt to locate any holder of an Allowed Claim.

(b)   Failure to Claim Undeliverable Distributions. Any holder of an Allowed Claim that does not assert its rights pursuant to the Plan to receive a distribution before the earlier of (a) five (5) years from and after the Effective Date and (b) the first Business Day that is at least thirty (30) days prior the Trust Termination Date, shall have its entitlement to an

27

undeliverable distribution discharged and shall be forever barred from asserting any Claim or entitlement pursuant to the Plan against the Reorganized Debtor, the Liquidation Trustee, or their property, and, in such case, any consideration held for distribution on account of such Claim shall revert to the Liquidation Trustee, for pro rata redistribution to the holders of Allowed General Unsecured Claims whose prior distributions were not returned as undeliverable. Should any subsequent redistribution be returned, the Liquidation Trustee in consultation with the Liquidation Trust Advisory Committee, shall determine if further distributions are warranted.

### 11.5    Time Bar to Cash Payments.

Checks issued on account of Allowed Claims shall be null and void if not negotiated within 180 days from and after the date of issuance thereof. Requests for re-issuance of any check shall be made directly to the drawer of the check (*i.e.*, the Reorganized Debtor or the Liquidation Trustee, as the case may be). Any claim in respect of such a voided check shall be made on or before the later of (a) five (5) years from and after the Effective Date, and (b) the first Business Day that is at least thirty (30) days prior the Trust Termination Date, if such check represents a final distribution hereunder on account of an Allowed Claim. After such date, all claims in respect of voided checks shall be discharged and forever barred and any consideration held for distribution on such claim shall revert back to the drawer (*i.e.*, the Reorganized Debtor or the Liquidation Trustee, as the case may be) and shall be treated in the same fashion as Undeliverable Distributions as provided in Section 11.4(b) of the Plan.

### 11.6    Setoffs.

The Reorganized Debtor or Liquidation Trust may, pursuant to applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights, and causes of action of any nature the Debtor, the Debtor-in-Possession, the Reorganized Debtor or the Liquidation Trustee may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Debtor-in-Possession, the Reorganized Debtor, or the Liquidation Trustee of any such claims, rights, and causes of action that the Debtor, the Debtor-in-Possession, or the Reorganized Debtor or the Liquidation Trustee may possess against such holder, and; provided, further, that nothing contained in the Plan is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 556, 559, 560, or 561 of the Bankruptcy Code or pursuant to the common law right of recoupment.

### 11.7    Allocation of Plan Distributions Between Principal and Interest.

To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

28

## ARTICLE XII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 12.1 Assumption or Rejection of Executory Contracts and Unexpired Leases.

Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all Executory Contracts that exist between the Debtor and any Person or Entity designated on Schedule 12.1 of the Plan Supplement shall be deemed assumed by the Debtor, as of the Effective Date, except for any Executory Contract (a) that has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date and for which the motion was filed prior to the Confirmation Date; or (b) as to which a motion for approval of the rejection of such Executory Contract has been filed and served prior to the Confirmation Date; provided, however, that the Debtor and the Reorganized Debtor reserve the right, on or prior to the later of the Confirmation Date or ten (10) days after a Final Order determining cure or any request for adequate assurance of future performance, to amend Schedule 12.1 of the Plan Supplement to delete any Executory Contract therefrom or add any Executory Contract thereto, in which event such Executory Contract(s) shall be deemed to be, respectively, assumed or rejected. The Debtor or the Reorganized Debtor shall provide notice of any amendment to Schedule 12.1 of the Plan Supplement to the parties to the Executory Contracts affected thereby. The listing of a document on Schedule 12.1 of the Plan Supplement shall not constitute an admission by the Debtor that such document is an Executory Contract or that the Debtor has any liability thereunder.

### 12.2 Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.

Subject to Section 12.1 of the Plan, entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a), 365(d)(2) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the Executory Contracts assumed pursuant to Section 12.1 of the Plan; (b) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, within which the Debtor may assume, assume and assign, or reject the Executory Contract specified in Section 12.1 of the Plan through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such Executory Contracts; and (c) the approval, pursuant to sections 365(a), 365(b)(2) and 1123(b)(2) of the Bankruptcy Code, of the rejection of all Executory Contracts not assumed pursuant to Section 12.1 of the Plan.

### 12.3 Inclusiveness.

Unless otherwise specified on Schedule 12.1 of the Plan Supplement, each Executory Contract listed or to be listed on Schedule 12.1 of the Plan Supplement shall include modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed on Schedule 12.1 of the Plan Supplement.

**12.4** **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**.

Except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed by the Debtor pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code. All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Reorganized Debtor's liability with respect thereto, or as otherwise may be agreed to by the parties.

**12.5** **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**.

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 12.1 of the Plan must be filed with the Bankruptcy Court and served upon the Debtor (or, on and after the Effective Date, Reorganized Debtor) and the Liquidation Trustee no later than thirty (30) days after the later of (a) notice of entry of an order approving the rejection of such executory contract or unexpired lease; (b) notice of entry of the Confirmation Order; and (c) notice of an amendment to Schedule 12.1 of the Plan Supplement. All such Claims not filed within such time will be forever barred from assertion against the Debtor and its estate, the Reorganized Debtor or the Liquidation Trust and its property.

**ARTICLE XIII.**

**CREDITORS' COMMITTEE**

**13.1** **Dissolution of Committee**.

On the Effective Date, the Committee shall be dissolved and the members thereof and the professionals retained by the Committee in accordance with section 1103 of the Bankruptcy Code shall be released and discharged from their respective fiduciary obligations; provided, however, that the Committee shall not be dissolved for the following limited purposes: (a) seeking approval of any application of a Professional Compensation and Reimbursement Claim; and (b) any appeals of the Confirmation Order. Following the Effective Date, none of the Committee's professionals shall be precluded from representing any Entity acting for the Liquidation Trust or other Entities created by the Plan, including, without limitation, the Liquidation Trustee, the Liquidation Trust or the Liquidation Trust Advisory Committee.

**ARTICLE XIV.**

**CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN; IMPLEMENTATION PROVISIONS**

**14.1** **Conditions Precedent to Effective Date of the Plan**.

The occurrence of the Effective Date and the substantial consummation of the Plan are subject to satisfaction of the following conditions precedent:

4049573.4

(a)   Entry of the Confirmation Order. The Clerk of the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtor, the Prepetition Lender, and the Plan Sponsor and the Confirmation Order is a Final Order.

(b)   Consents Obtained. The Debtor shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are necessary to implement the Plan and that are required by law, regulation, or order.

(c)   Liquidation Trust. The Liquidation Trust Agreement shall have been executed and all steps necessary to establish the Liquidation Trust in accordance with and pursuant to the terms of the Plan.

### 14.2   Failure of Conditions Precedent.

In the event that one or more of the conditions specified in Section 14.1 hereof have not occurred on or before July 31, 2011: (a) the Confirmation Order shall be vacated; (b) no distributions under the Plan shall be made; (c) the Debtor and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date; and (d) the Debtor's obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed to be a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor. For the avoidance of doubt, and notwithstanding anything in the Disclosure Statement or the Plan to the contrary, if the Plan is not confirmed or does not become effective, nothing in the Plan or the Disclosure Statement shall be construed as a waiver of any rights or claims of the Debtor.

### 14.3   Waiver of Conditions Precedent.

The Debtor may waive one (1) or more of the conditions precedent to effectiveness of the Plan set forth in Section 14.1 hereof.

## ARTICLE XV.

## PROVISIONS REGARDING CORPORATE GOVERNANCE AND MANAGEMENT OF THE REORGANIZED DEBTOR AND THE PLAN SPONSOR

### 15.1   General.

On the Effective Date, the management, control, and operation of the Reorganized Debtor shall become the general responsibility of the Board.

### 15.2   Directors and Officers.

(a)   The Board.  The Board shall consist of Michael C. Hadjinian, Michael L. Martell, and George Batenburg.

(b)   The Officers.

31

4049573.4

(i)     President.  The President of the Reorganized Debtor shall be Michael Hadjinian.

(ii)    Vice-President.  The Vice-President of the Reorganized Debtor shall be Jeffrey McGrady.

(iii)   Secretary.  The Secretary of the Reorganized Debtor shall be Michael L. Martell.

(iv)    Treasurer.  The Treasurer of the Reorganized Debtor shall be [Reserved].

## ARTICLE XVI.

## EFFECT OF CONFIRMATION

### 16.1    No Alter Ego.

Notwithstanding anything to the contrary contained herein, neither entry of the Confirmation Order nor consummation of the transactions set forth herein, including without limitation the Restructuring Transactions, (a) creates, or shall be deemed to create, an "alter ego" relationship between the Reorganized Debtor and the Plan Sponsor; or (b) shall warrant or support, or be deemed to warrant or support, disregarding the independent corporate form and/or mutual independence of the Reorganized Debtor and the Plan Sponsor in all respects, which such independent corporate form and mutual independence of the Reorganized Debtor and Plan Sponsor is hereby acknowledged and preserved in all respects.

### 16.2    Title to and Vesting of Assets.

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the estate of the Debtor shall vest in the Reorganized Debtor or the Liquidation Trust, as the case may be, free and clear of all Claims, Liens, encumbrances, and other interests, except as provided herein, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtor and the Debtor-in-Possession except as may be otherwise provided in the Plan. From and after the Effective Date, the Reorganized Debtor, subject to the terms of the Plan, may operate its business and may use, acquire, and dispose of property free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as may be otherwise provided herein.

### 16.3    Discharge of Claims and Termination of Equity Interests.

Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall be in exchange for and in complete satisfaction and discharge of all existing debts and Claims, and shall terminate all Equity Interests, of any kind, nature, or description whatsoever, including any interest accrued on such Claims from and after the Petition Date, against or in the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, on the Effective Date, all existing Claims

32

against the Debtor and Equity Interests in the Debtor, shall be, and shall be deemed to be satisfied and discharged, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtor or the Liquidation Trust, or any of their respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.

### 16.4    Discharge of Debtor.

Upon the Effective Date and in consideration of the Distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have such Claim or Equity Interest satisfied and discharged by the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all Persons and Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from asserting against the Debtor, the Debtor-in-Possession, the Liquidation Trust, or their respective successors or assigns, including, without limitation, the Reorganized Debtor, the Liquidation Trust, or their respective assets, properties or interests in property, any discharged Claim or Equity Interest in the Debtor, any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefore were known or existed prior to the Confirmation Date regardless of whether a proof of Claim or Equity Interest was filed, whether the holder thereof voted to accept or reject the Plan or whether the Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest.

### 16.5    Injunction on Claims.

Except as otherwise expressly provided in the Plan, the Confirmation Order, or such other Final Order of the Bankruptcy Court that may be applicable, all Persons or Entities who have held, hold, or may hold Claims or other debt or liability that is discharged, or Equity Interests or other right of equity interest that is discharged pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from:

(a) commencing or continuing, in any manner, any action or other proceeding of any kind on any such Claim or other debt or liability, or Equity Interest or other right of equity interest, that is terminated or cancelled pursuant to the Plan against the Debtor, the Debtor-in-Possession, or the Reorganized Debtor, the Debtor's estate, or properties or interests in properties of the Debtor, the Reorganized Debtor, the Plan Sponsor, or the Liquidation Trust;

(b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor, the Debtor-in-Possession, or the Reorganized Debtor, the Debtor's estate or properties, the Liquidation Trust, or interests in properties of the Debtor, the Debtor-in-Possession, the Reorganized Debtor, the Plan Sponsor, or the Liquidation Trust;

4049573.4

(c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Debtor-in-Possession, or the Reorganized Debtor, the Debtor's estate or properties, the Liquidation Trust, or interests in properties of the Debtor, the Debtor-in-Possession, the Reorganized Debtor, the Plan Sponsor, or the Liquidation Trust;

(d) except to the extent provided, permitted, or preserved by sections 553, 555, 556, 559, 560 or 561 of the Bankruptcy Code, or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor, the Debtor-in-Possession, or the Reorganized Debtor, the Debtor's estate or properties, the Liquidation Trust, or interests in properties of the Debtor, the Debtor-in-Possession, the Reorganized Debtor, the Plan Sponsor, or the Liquidation Trust with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan; and

(e) taking any actions to interfere with the implementation or consummation of the Plan; provided, however, that such injunction shall not preclude the United States of America, any state, or any of their respective police or regulatory agencies from enforcing their police or regulatory powers; and, provided, further, that except in connection with a properly filed proof of claim, the foregoing proviso does not permit the United States of America, any state, or any of their respective police or regulatory agencies from obtaining any monetary recovery from the Debtor, the Debtor-in-Possession, or the Reorganized Debtor, the Plan Sponsor, or their respective property or interests in property with respect to any such Claim or other debt or liability that is discharged or Equity Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim or penalty in furtherance of a police or regulatory power. Such injunction shall extend to all successors of the Debtor and Debtor-in-Possession, including the respective properties and interests in property of all of the foregoing.

### 16.6    Term of Existing Injunctions or Stays.

Unless otherwise provided in the Plan, the Confirmation Order, or a separate Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

### 16.7    Exculpation.

None of the Plan Proponents, the Reorganized Debtor, Plan Sponsor, and any of their respective directors, officers, employees, members, attorneys, consultants, advisors, and agents (but solely in their capacities as such), shall have or incur any liability to any holder of a Claim or Equity Interest or to any other Entity for any act taken or omitted to be taken in connection with, related to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation, approval, or administration of the Plan or any compromises or settlements contained therein, the Disclosure Statement related thereto, the property to be distributed under the Plan, or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the foregoing provisions of this

Section 16.7 shall not affect the liability of (a) any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, including, without limitation, fraud and criminal misconduct; or (b) the Debtor's Professionals pursuant to applicable codes of professional conduct. Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### 16.8    Preservation of Causes of Action / Reservation of Rights.

(a)    Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release, or the relinquishment of any rights or Causes of Action that the Debtor, the Reorganized Debtor, or the Liquidation Trust may have or which the Reorganized Debtor or the Liquidation Trust may choose to assert under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Causes of Action against any Person or Entity, to the extent such Person or Entity asserts a cross-claim, counterclaim and/or Claim for setoff which seeks affirmative relief against the Debtor, the Reorganized Debtor, their officers, directors, or representatives; (ii) the turnover of any property of the Debtor's estate; and (iii) Causes of Action (other than the Released Claims) against current or former directors, officers, professionals, agents, financial advisors, underwriters, lenders, or auditors relating to acts or omissions occurring prior to the Effective Date.

(b)    Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release, or relinquishment of any Cause of Action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Reorganized Debtor or the Liquidation Trust, as the case may be, shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced or the Liquidation Trust Claims had not been transferred to the Liquidation Trust in accordance with the Plan, and all of the Reorganized Debtor's legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

(c)    To facilitate the preservation of Causes of Action and the reservation of rights provided herein, the Debtor incorporates herein the Debtor's response to question 3.b of the Statement of Financial Affairs filed by the Debtor, which is attached hereto as Schedule 16.8. Each Entity having received a transfer as noted on Schedule 16.8 is hereby notified that the Liquidation Trustee may institute litigation to recover such transfers.

### 16.9    Injunction on Causes of Action.

Except as provided in the Plan, as of the Effective Date, all non-Debtor Entities are permanently enjoined from commencing or continuing in any manner, any Causes of Action, whether directly, derivatively, on account of or respecting any debt or Cause of Action of the Debtor, the Debtor-in-Possession, the Plan Sponsor, or the Reorganized Debtor which the Debtor, the Debtor-in-Possession, the Reorganized Debtor, or the Liquidation Trust, as the case may be, retain sole and exclusive authority to pursue in accordance with the Plan or which has

35

been released pursuant to the Plan, including, without limitation, pursuant to Article XVII of the Plan.

### 16.10   Limited Release of Officers, Directors, and Employees.

Except with respect to claims and causes of action commenced before the hearing on confirmation of the Plan, any and all claims and causes of action of the Debtor's estate against its present officers, directors, employees, consultants, and agents and arising from or relating to the period prior to the Petition Date are hereby waived and released. As of the Effective Date, except with respect to claims and causes of action commenced before the hearing on confirmation of the Plan, the Debtor shall be deemed to have waived and released its present officers, directors, employees, consultants, and agents who were officers, directors, employees, consultants, or agents, respectively, at any time during the Chapter 11 Case, from any and all claims and causes of action of the Debtor's estate arising from or relating to the period from and after the Petition Date. Notwithstanding the foregoing, nothing contained in the Plan is intended, nor shall it be construed, to release any of the Debtor's claims or causes of action that may exist against the Debtor's director and officer liability insurance. Notwithstanding the foregoing, nothing contained in this section is or shall be deemed to be a waiver or release of any Retained Causes of Action.

### 16.11   Release and Limitation of Liability.

NOTWITHSTANDING ANYTHING SET FORTH HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE, THE DEBTOR, ITS ESTATE, THE DEBTOR-IN-POSSESSION, THE REORGANIZED DEBTOR, THE COMMITTEE, THE LIQUIDATION TRUST, THE LIQUIDATION TRUSTEE, THE PLAN SPONSOR, AND THE PREPETITION LENDER (COLLECTIVELY, THE "RELEASED PARTIES") SHALL BE DEEMED TO HAVE IRREVOCABLY RELEASED AND DISCHARGED THE OTHER RELEASED PARTIES AND THE OTHER RELEASED PARTIES' FORMER AND CURRENT OFFICERS, CURRENT AND FORMER DIRECTORS, AGENTS, ATTORNEYS, FINANCIAL ADVISORS, AND PROFESSIONALS EMPLOYED BY ANY OF SUCH OTHER RELEASED PARTIES (BUT SOLELY IN THE CAPACITIES SO EMPLOYED) OF AND FROM ANY CLAIM OR CAUSE OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED, NOW EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, ARISING FROM OR RELATED TO ACTS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE IN CONNECTION WITH, BASED ON, RELATING TO OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE CHAPTER 11 CASE, THE NEGOTIATION OF ANY SETTLEMENT OR AGREEMENT IN THE CHAPTER 11 CASE, OR THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, AND THE RELEASED PARTIES COVENANT NOT TO SUE ANY OF THE OTHER PARTIES IDENTIFIED IN THIS SECTION WITH RESPECT TO THE CLAIMS AND CAUSES OF ACTION RELEASED HEREIN (ALL OF THE

36

FOREGOING BEING HEREIN CALLED THE "RELEASED CLAIMS"); PROVIDED, HOWEVER, THAT RELEASED CLAIMS SHALL NOT INCLUDE THE RETAINED CAUSES OF ACTION AND OBLIGATIONS UNDER THE PLAN OR THE CONFIRMATION ORDER, AND, PROVIDED FURTHER, THAT NO RELEASED PARTIES SHALL BE RELEASED AND DISCHARGED FROM ANY CLAIM OR CAUSE OF ACTION ARISING FROM OR RELATED TO ACTS OR OMISSIONS INVOLVING FRAUD OR WILLFUL MISCONDUCT.

EACH OF THE RELEASED PARTIES REPRESENTS AND WARRANTS THAT EACH SUCH RELEASED PARTY HAS NOT TRANSFERRED, PLEDGED OR OTHERWISE ASSIGNED TO ANY OTHER PERSON OR ENTITY ALL OR ANY PORTION OF ANY RELEASED CLAIM OR ANY RIGHTS OR ENTITLEMENTS WITH RESPECT THERETO AND THE EFFECTUATION OF THIS RELEASE DOES NOT VIOLATE OR CONFLICT WITH THE TERMS OF ANY CONTRACT TO WHICH SUCH RELEASED PARTY IS A PARTY OR BY WHICH SUCH RELEASED PARTY OTHERWISE IS BOUND.  FOR THE AVOIDANCE OF DOUBT, ALL CAUSES OF ACTION OF THE DEBTOR OR ITS ESTATE AGAINST THE PREPETITION LENDER (INCLUDING AVOIDANCE ACTIONS) ARISING PRIOR TO THE EFFECTIVE DATE OF THE PLAN, IF ANY, ARE BEING RELEASED PURSUANT TO THIS PARAGRAPH AND SUCH CAUSES OF ACTION ARE NOT RETAINED BY, OR CONVEYED TO, ANY PARTY (INCLUDING THE LIQUIDATION TRUST) PURSUANT TO THE PLAN OR ANY RELATED DOCUMENTS.

NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, NOTHING CONTAINED HEREIN IS OR SHALL BE DEEMED TO BE A WAIVER, RELEASE, OR INJUNCTION OF ANY RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR REMEDY, KNOWN OR UNKNOWN, ASSERTED OR UNASSERTED, FIXED OR CONTINGENT, LIQUIDATED OR UNLIQUIDATED, NOW EXISTING OR HEREAFTER ARISING, BELONGING TO BV AS AGAINST PARAMOUNT AND/OR BELONGING TO PARAMOUNT AS AGAINST BV (COLLECTIVELY, THE "BV-PARAMOUNT RIGHTS"), ANY AND ALL OF WHICH SUCH BV-PARAMOUNT RIGHTS ARE HEREBY EXPRESSLY RESERVED AND PRESERVED; PROVIDED FURTHER, THAT ANY AND ALL BV-PARAMOUNT RIGHTS ARE IN NO WAY MODIFIED HEREBY AND NOTHING CONTAINED HEREIN IS OR SHALL BE DEEMED TO BE AN ADMISSION BY EITHER BV OR PARAMOUNT AS TO THE NATURE, EXTENT, VALIDITY, OR ENFORCEABILITY OF ANY BV-PARAMOUNT RIGHT.

## ARTICLE XVII.

### RETENTION OF JURISDICTION

#### 17.1    Retention of Jurisdiction.

The Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Case or the Plan, or that relates to the following purposes:

4049573.4

(a)     to resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment after the Effective Date of the Plan, to add any executory contracts or unexpired leases to the list of Executory Contracts set forth in Schedule 12.1 of the Plan Supplement;

(b)     to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

(c)     to determine any and all motions, adversary proceedings, applications, and contested or litigation matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtor or the Liquidation Trust prior to or after the Effective Date (which jurisdiction shall be non-exclusive as to any non-core matters);

(d)     to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(e)     to hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim and Equity Interests filed, both before and after the Effective Date, including any objections to the classification of any Claim or Equity Interest, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

(f)     to resolve any Disputed Claims;

(g)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(h)     to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(i)     to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j)     to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses of professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

(k)     to hear and determine disputes arising in connection with or relating to the Plan, or the interpretation, implementation, or enforcement of the Plan, or the extent of any Entity's obligations incurred in connection with or released under the Plan;

(l)     to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(m)    to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, or any other contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement;

(n)    to recover all assets of the Debtor and property of the Debtor's estate, wherever located;

(o)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(p)    to determine the scope of any discharge of the Debtor under the Plan or the Bankruptcy Code;

(q)    to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code;

(r)    to resolve any disputes regarding whether a Cause of Action constitutes a Retained Cause of Action or a Liquidation Trust Claim;

(s)    to hear and determine disputes arising in connection with the administration of the Liquidation Trust and the implementation of the duties and obligations imposed by the Liquidation Trust Agreement; and

(t)    to enter a final decree closing the Chapter 11 Case.

## ARTICLE XVIII.

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### 18.1    Modification of the Plan.

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan, the Plan Supplement, or any exhibits to the Plan at any time prior to entry of the Confirmation Order. Upon entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, including, without limitation, to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

### 18.2    Revocation or Withdrawal of the Plan.

(a)    The Plan may be revoked or withdrawn prior to the Confirmation Date.

39

(b)      If the Plan is revoked or withdrawn by the Debtor prior to the Confirmation Date, or if the Plan does not become effective for any reason whatsoever, the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any other Entity in any further proceedings involving the Debtor.

## ARTICLE XIX.

## MISCELLANEOUS PROVISIONS

### 19.1    Effectuating Documents and Further Transactions.

The Debtor and the Reorganized Debtor are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.

### 19.2    Withholding and Reporting Requirements.

In connection with the consummation of the Plan, the Debtor, the Reorganized Debtor, or the Liquidation Trustee, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### 19.3    Plan Supplement.

Debtor shall file a plan supplement (the "**Plan Supplement**") with the Clerk of the Bankruptcy Court at least ten (10) days prior to the last day upon which holders of Claims may vote to accept or reject the Plan; provided, however, that the Debtor may amend the Plan and each of the other documents contained in the Plan Supplement, subject to Section 18.1 of the Plan, through and including the Effective Date in a manner consistent with the Plan and Disclosure Statement.

The Plan Supplement shall contain, at a minimum, (a) the Liquidation Trust Agreement; (b) the Plan Instruments; (c) the articles of incorporation or organization for the Reorganized Debtor; (d) Plan Schedule 12.1, consisting of a list of all Executory Contracts to be assumed by the Reorganized Debtor; and (e) a proposed form of Confirmation Order.

Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims

4049573.4

or Equity Interests may obtain a copy of the Plan Supplement free of charge by contacting Hahn Loeser & Parks LLP, counsel to the Debtor.

### 19.4    Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid by the Reorganized Debtor when and as due, or otherwise pursuant to an agreement between the Reorganized Debtor and the United States Department of Justice, Office of the United States Trustee, until the earlier of (a) the Chapter 11 Case shall being closed in accordance with the provisions of the Plan; and (b) the transfer of the Net Plan Cash to the Liquidation Trust. In the case of (b), all fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid by the Liquidation Trustee until the Chapter 11 Case is closed in accordance with the provisions of the Plan.

### 19.5    Expedited Tax Determination.

The Reorganized Debtor may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Reorganized Debtor for all taxable periods through the Effective Date.

### 19.6    Post-Confirmation Date Fees and Expenses.

From and after the Confirmation Date, the Reorganized Debtor and the Liquidation Trust shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court; (a) retain professionals; and (b) pay the reasonable fees and expenses (including reasonable professional fees and expenses) incurred by the Debtor, the Reorganized Debtor, or the Liquidation Trust, as the case may be, related to implementation and consummation of, or consistent with the provisions of, the Plan.

### 19.7    Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 19.8    Severability.

If, prior to the Confirmation Date, any term or provision of the Plan shall be held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

19.9    Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that an attachment or exhibit hereto provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Ohio, without giving effect to principles of conflicts of laws.

19.10   Time.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

19.11   Binding Effect.

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests, the Liquidation Trust, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

19.12   Exhibits/Schedules.

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

19.13   Notices.

All notices, requests, and demands to or upon the Debtor, the Debtor-in-Possession, or the Reorganized Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Ventilex USA Inc.
4640 Emerald Way
Middletown, Ohio 45044
Attn:   Michael C. Hadjinian, President

With a copy to:

Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, Ohio  44114-2316
Attn:   Lee D. Powar, Esq.
        Rocco I. Debitetto, Esq.

4049573.4

### 19.14    Closing of the Chapter 11 Case.

The Liquidation Trustee shall, promptly upon the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court.  Upon transfer of the Net Plan Cash to the Liquidation Trust, the Reorganized Debtor shall be relieved of any other or further reporting requirements under the Bankruptcy Code, Bankruptcy Rules, or otherwise in respect of the Chapter 11 Case.

### 19.15    Section Headings.

The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

### 19.16    Exemption from Registration.

Pursuant to section 1145 of the Bankruptcy Code, and except as provided in subsection (b) thereof, the issuance of the New Equity on account of, and in exchange for, the Post-Petition Lender Claim shall be exempt from registration pursuant to section 5 of the Securities Act of 1933 and any other applicable non-bankruptcy law or regulation.

### 19.17    Exemption from Transfer Taxes.

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of the New Equity pursuant to the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 19.18    Conflicts/Inconsistencies.

To the extent of any conflicts or inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern.  To the extent of any conflicts or inconsistencies between the terms and provisions of the Plan and the terms and provisions of the Confirmation Order, the terms and provisions of the Confirmation Order shall govern.

4049573.4

Dated:  June 24, 2011

Prepared and Submitted by:

VENTILEX USA INC.

By: /s/ Rocco I. Debitetto
     Lee D. Powar (0033679)
     Rocco I. Debitetto (0073878)
     Hahn Loeser & Parks LLP
     200 Public Square, Suite 2800
     Cleveland, Ohio 44114
     Telephone:(216) 621-0150
     Facsimile: (216) 241-2824
     E-Mail:  ldpowar@hahnlaw.com
              ridebitetto@hahnlaw.com

*Counsel for Debtor and Debtor-in-Possession*

AND

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS:

By: /s/ Scott N. Schreiber
     Scott N. Schreiber (Pro Hac Vice)
     Shelly A. DeRousse (Pro Hac Vice)
     Stahl Cowen Crowley Addis, LLC
     55 West Monroe Street, Suite 1200
     Chicago, Illinois 60603
     Phone: (312) 641-0060
     Facsimile (312) 641-6959
     sschreiber@stahlcowen.com
     sderousse@stahlcowen.com

*Counsel for the Official Committee of Unsecured Creditors*

4049573.4

**Agreed to and Accepted by:**

PARAMOUNT FARMS INTERNATIONAL,
LLC F/K/A PARAMOUNT FARMS, INC.

By: (signature pending)
Its: _____


JOHN B. SANFILIPPO & SON, INC.

By: (signature pending)
Its: _____


CALIFORNIA NUT COMPANY

By: (signature pending)
Its: _____

2

# Schedule 16.8

Bankruptcy2010 ©1991-2010, New Hope Software, Inc., ver. 4.5.5-752 - 31805-102Y-0855/0 - Acrobat PDFWriter

**2.   Income other than from employment or operation of business**

None

☐          State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case. Give particulars.  If a joint petition is filed, state income for each spouse separately.  (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                                      SOURCE

See Attached for Other Income Received

**3. Payments to creditors**

None

☒        *Complete a. or b., as appropriate, and c.*

*a. Individual or joint debtor(s) with primarily consumer debts:*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within 90 days immediately preceding the commencement of this case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $600. Indicate with an asterisk (*) any payments that were made to a creditor on account of a domestic support obligation or as  part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None

☐        *b. Debtor whose debts are not primarily consumer debts:*  List each payment or other transfer to any creditor made within 90 days immediately preceding the commencement of the case unless the aggregate value of all property that constitutes or is affected by such transfer is less than $5,850*.  If the debtor is an individual, indicate with an asterisk (*)any payments that were made to a creditor on account of a domestic support obligation or as part of an alternativerepayment schedule under a plan by an approved nonprofit budgeting and credit counseling agency.  (Married debtors filing under chapter 12 or chapter 13 must include payments and other transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

*\*Amount subject to adjustment on 4/01/13, and every three years thereafter with respect to cases commenced on or after date of adjustment.*

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

See Attached List

# STATEMENT OF FINANCIAL AFFAIRS ITEM 3(b)

## Ventilex USA Inc.
## Check Detail
June 28 through September 28, 2010

| Type | Num | Date | Name | Account | Original Amount |
|------|-----|------|------|---------|-----------------|
| Bill Pmt -Check | 3770 | 07/06/2010 | Aaron R. Walker | 1020 · Checking/US Bank | -3,261.78 |
| Bill Pmt -Check | 3824 | 08/10/2010 | Aaron R. Walker | 1020 · Checking/US Bank | -307.99 |
| Bill Pmt -Check | 3828 | 08/16/2010 | Aaron R. Walker | 1020 · Checking/US Bank | -3,746.39 |
| Bill Pmt -Check | 3869 | 09/09/2010 | Aaron R. Walker | 1020 · Checking/US Bank | -4,938.42 |
| | | | 4108 Ivanhoe Ave | | |
| | | | Cincinnati, OH 45212 | | |
| Bill Pmt -Check | 3780 | 07/12/2010 | Adam C. Higgins | 1020 · Checking/US Bank | -2,003.44 |
| Bill Pmt -Check | 3825 | 08/10/2010 | Adam C. Higgins | 1020 · Checking/US Bank | -3,451.31 |
| Bill Pmt -Check | 3872 | 09/13/2010 | Adam C. Higgins | 1020 · Checking/US Bank | -683.71 |
| | | | 6755 Woodsedge Dr | | |
| | | | Liberty Twp, OH 45044 | | |
| Bill Pmt -Check | 3754 | 06/28/2010 | Ballard Spahr | 1020 · Checking/US Bank | -25,741.34 |
| Bill Pmt -Check | 3773 | 07/08/2010 | Ballard Spahr | 1020 · Checking/US Bank | -7,859.50 |
| Bill Pmt -Check | 3839 | 08/17/2010 | Ballard Spahr | 1020 · Checking/US Bank | -7,897.37 |
| | | | 2029 Century Park East, Suite 800 | | |
| | | | Los Angeles, CA 90067-2909 | | |
| Bill Pmt -Check | 3874 | 09/16/2010 | Cincinnati Heat Exchangers, Inc. | 1020 · Checking/US Bank | -10,180.00 |
| | | | 6404 Thornberry Court, Suite 440 | | |
| | | | Mason, OH 45040 | | |
| Bill Pmt -Check | ACH | 09/28/2010 | Hahn Loeser | 1020 · Checking/US Bank | -25,000.00 |
| Bill Pmt -Check | 3830 | 08/17/2010 | Hahn Loeser | 1020 · Checking/US Bank | -19,300.82 |
| Bill Pmt -Check | 3857 | 08/30/2010 | Hahn Loeser | 1020 · Checking/US Bank | -1,301.00 |
| | | | 200 Public Square | | |
| | | | Suite 2800 | | |
| | | | Cleveland, OH 44114 | | |
| Bill Pmt -Check | 3771 | 07/06/2010 | Jodi Lex | 1020 · Checking/US Bank | -447.09 |
| Bill Pmt -Check | 3813 | 08/02/2010 | Jodi Lex | 1020 · Checking/US Bank | -1,076.11 |
| Bill Pmt -Check | 3832 | 08/17/2010 | Jodi Lex | 1020 · Checking/US Bank | -3,478.05 |
| Bill Pmt -Check | 3870 | 09/09/2010 | Jodi Lex | 1020 · Checking/US Bank | -3,072.28 |

## Ventilex USA Inc.
### Check Detail
June 28 through September 28, 2010

| | | | | | |
|---|---|---|---|---|---|
| Bill Pmt -Check | 3895 | 09/27/2010 | Jodi Lex<br>201 Wine Sap Lane<br>Middletown, OH 45044 | 1020 · Checking/US Bank | -1,334.39 |
| Bill Pmt -Check | 3772 | 07/08/2010 | King Mechanical<br>15 East Walnut Street<br>Chippewa Falls, WI 54729 | 1020 · Checking/US Bank | -9,332.20 |
| Bill Pmt -Check | 3774 | 07/08/2010 | Morrison Cohen LLP | 1020 · Checking/US Bank | -42,571.27 |
| Bill Pmt -Check | 3775 | 07/08/2010 | Morrison Cohen LLP | 1020 · Checking/US Bank | -28,586.96 |
| Bill Pmt -Check | 3816 | 08/05/2010 | Morrison Cohen LLP | 1020 · Checking/US Bank | -34,856.93 |
| Bill Pmt -Check | 3818 | 08/10/2010 | Morrison Cohen LLP | 1020 · Checking/US Bank | -14,911.98 |
| Bill Pmt -Check | 3873 | 09/13/2010 | Morrison Cohen LLP<br>909 Third Avenue<br>New York, NY 10022-4731 | 1020 · Checking/US Bank | -24,061.07 |
| Bill Pmt -Check | 3759 | 06/28/2010 | Siftex | 1020 · Checking/US Bank | -1,212.55 |
| Bill Pmt -Check | 3766 | 07/05/2010 | Siftex | 1020 · Checking/US Bank | -1,638.00 |
| Bill Pmt -Check | 3835 | 08/17/2010 | Siftex | 1020 · Checking/US Bank | -3,698.95 |
| Bill Pmt -Check | 3882 | 09/16/2010 | Siftex<br>52D Connecticut Ave.<br>South Windsor, CT 06074 | 1020 · Checking/US Bank | -1,168.40 |
| Bill Pmt -Check | 3760 | 06/28/2010 | Star Combustion Systems LLC | 1020 · Checking/US Bank | -9,149.02 |
| Bill Pmt -Check | 3769 | 07/05/2010 | Star Combustion Systems LLC | 1020 · Checking/US Bank | -11,694.00 |
| Bill Pmt -Check | 3798 | 07/26/2010 | Star Combustion Systems LLC | 1020 · Checking/US Bank | -14,988.00 |
| Bill Pmt -Check | 3822 | 08/10/2010 | Star Combustion Systems LLC | 1020 · Checking/US Bank | -141.79 |
| Bill Pmt -Check | 3836 | 08/17/2010 | Star Combustion Systems LLC | 1020 · Checking/US Bank | -14,215.00 |
| Bill Pmt -Check | 3867 | 09/08/2010 | Star Combustion Systems LLC | 1020 · Checking/US Bank | -10,574.57 |
| Bill Pmt -Check | 3883 | 09/16/2010 | Star Combustion Systems LLC<br>PO Box 636<br>Mason, OH 45040 | 1020 · Checking/US Bank | -18,599.50 |
| Bill Pmt -Check | 3767 | 07/05/2010 | The New York Blower Company | 1020 · Checking/US Bank | -9,966.94 |
| Bill Pmt -Check | 3799 | 07/26/2010 | The New York Blower Company<br>Dept. 20-1094<br>PO Box 5940 | 1020 · Checking/US Bank | -1,125.75 |

## Ventilex USA Inc.
## Check Detail
June 28 through September 28, 2010

Carol Stream, IL 60197-5940

| Bill Pmt -Check | 3761 | 06/28/2010 | UPS Supply Chain Solutions, Inc. | 1020 · Checking/US Bank | -21.66 |
| Bill Pmt -Check | 3802 | 07/26/2010 | UPS Supply Chain Solutions, Inc. | 1020 · Checking/US Bank | -1,350.83 |
| Bill Pmt -Check | 3837 | 08/17/2010 | UPS Supply Chain Solutions, Inc. | 1020 · Checking/US Bank | -25.38 |
| Bill Pmt -Check | 3853 | 08/23/2010 | UPS Supply Chain Solutions, Inc. | 1020 · Checking/US Bank | -46.32 |
| Bill Pmt -Check | 3860 | 08/30/2010 | UPS Supply Chain Solutions, Inc. | 1020 · Checking/US Bank | -5,861.72 |
| Bill Pmt -Check | 3868 | 09/08/2010 | UPS Supply Chain Solutions, Inc. | 1020 · Checking/US Bank | -165.00 |
| | | | 28013 Network Place | | |
| | | | Chicago, IL 60673-1280 | | |
| | | | | | |
| Bill Pmt -Check | 3783 | 07/12/2010 | Victory Search Group | 1020 · Checking/US Bank | -4,054.76 |
| Bill Pmt -Check | 3827 | 08/12/2010 | Victory Search Group | 1020 · Checking/US Bank | -5,286.44 |
| Bill Pmt -Check | 3838 | 08/17/2010 | Victory Search Group | 1020 · Checking/US Bank | -22,100.00 |
| | | | 5464 N Port Washington Rd. | | |
| | | | Number 292 | | |
| | | | Milwaukee, WI 53217 | | |