## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

-------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Case No. 10-16642 |
| | : | |
| Ventilex USA Inc., | : | Chapter 11 |
| | : | |
| Debtor. | : | Judge Jeffery P. Hopkins |

-------------------------------------------------------- x

## DISCLOSURE STATEMENT FOR JOINT PLAN OF REORGANIZATION OF VENTILEX USA INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS OF APRIL 1, 2011, AS MODIFIED

| | |
|---|---|
| Lee D. Powar (0033679) | Scott N. Schreiber (*Pro Hac Vice*) |
| Rocco I. Debitetto (0073878) | Shelly A. DeRousse (*Pro Hac Vice*) |
| Hahn Loeser & Parks LLP | Stahl Cowen Crowley Addis, LLC |
| 200 Public Square, Suite 2800 | 55 West Monroe Street, Suite 1200 |
| Cleveland, Ohio 44114 | Chicago, Illinois 60603 |
| Telephone:    (216) 621-0150 | Telephone:    (312) 641-0060 |
| Facsimile:    (216) 241-2824 | Facsimile     (312) 641-6959 |
| ldpowar@hahnlaw.com | sschreiber@stahlcowen.com |
| ridebitetto@hahnlaw.com | sderousse@stahlcowen.com |
| | |
| *COUNSEL FOR DEBTOR AND* | *COUNSEL FOR THE OFFICIAL* |
| *DEBTOR-IN-POSSESSION* | *COMMITTEE OF UNSECURED* |
| | *CREDITORS* |

4064120.2

*Table of Contents*

I.      INTRODUCTION ...................................................................................................1

        A.      Purpose of this Document.......................................................................... 1

        B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing............ 2

                1.      Time and Place of the Hearing on Approval of the Plan. ...........................2

                2.      Deadline For Voting to Accept or Reject the Plan. ...................................2

                3.      Identity of Person to Contact for More Information. ..................................2

        C.      Disclaimer. ............................................................................................ 2

II.     BACKGROUND ...................................................................................................3

        A.      Description and History of the Debtor's Businesses. ............................... 3

        B.      Officers, Directors, and Shareholder(s) of the Debtor. ........................... 3

        C.      Management of the Debtor Before and During the Bankruptcy............................ 4

        D.      Events Leading to Chapter 11 Filing. .................................................... 5

        E.      Significant Events During the Bankruptcy Case. ................................... 5

        F.      Projected Recovery of Preferential or Fraudulent Transfers. ................. 7

        G.      Debtor's Current Financial Condition. ................................................... 7

III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF
        CLAIMS AND EQUITY INTERESTS.................................................................7

        A.      What is the Purpose of the Plan of Reorganization?............................... 7

        B.      Unclassified Claims. ............................................................................. 7

                1.      Administrative Expenses. .........................................................................7

                2.      Post-Petition Lender Claim.......................................................................8

                3.      Professional Compensation and Reimbursement Claims. ..........................8

                4.      Priority Tax Claims...................................................................................8

        C.      Classes of Claims and Equity Interests.................................................. 9

        D.      Means of Implementing the Plan. ........................................................ 16

                1.      Plan Sponsor. .........................................................................................16

                2.      Restructuring Transactions. ....................................................................16

                3.      The Liquidation Trust .............................................................................17

                4.      Vesting of Assets in the Reorganized Debtor or Liquidation Trust..........18

                5.      Cancellation of Debt and Equity Securities and Related
                        Obligations. ...........................................................................................18

4064120.2

| | | | |
|---|---|---|---|
| | 6. | Preservation and Prosecution of Causes of Action Held by the Debtor. | 19 |
| | 7. | Provision for Treatment of Disputed Claims Under the Plan. | 19 |
| IV. | RISK FACTORS | | 21 |
| V. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | | 21 |
| | A. | Assumption or Rejection of Executory Contracts and Unexpired Leases. | 21 |
| | B. | Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases. | 22 |
| | C. | Inclusiveness. | 22 |
| | D. | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. | 22 |
| | E. | Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan. | 23 |
| VI. | TAX CONSEQUENCES OF PLAN | | 23 |
| VII. | CONFIRMATION REQUIREMENTS AND PROCEDURES | | 23 |
| | A. | Who May Vote or Object | 23 |
| | | 1. What Is an Allowed Claim or an Allowed Equity Interest? | 24 |
| | | 2. What Is an Impaired Claim or Impaired Equity Interest? | 24 |
| | | 3. Who is Not Entitled to Vote on the Plan? | 24 |
| | B. | Votes Necessary to Confirm the Plan. | 25 |
| | | 1. Votes Necessary for a Class to Accept the Plan. | 25 |
| | | 2. Treatment of Non-Accepting Classes. | 25 |
| | | 3. Cramdown of the Plan. | 25 |
| | C. | Liquidation Analysis | 26 |
| | D. | Feasibility | 27 |
| | | 1. Ability to Fund Plan Initially | 27 |
| | | 2. Ability to Make Future Plan Payments and Operate Without Further Reorganization | 27 |
| VIII. | EFFECT OF CONFIRMATION OF PLAN | | 27 |
| | A. | Title to and Vesting of Assets. | 27 |
| | B. | Discharge of Claims and Termination of Equity Interests. | 28 |
| | C. | Discharge of Debtor. | 28 |
| | D. | Injunction on Claims. | 28 |
| | E. | Term of Existing Injunctions or Stays. | 29 |
| | F. | Exculpation. | 29 |

G.    Preservation of Causes of Action / Reservation of Rights.................................... 29

H.    Injunction on Causes of Action............................................................................. 30

I.     Limited Release of Officers, Directors, and Employees........................................ 30

J.     Other Releases ..................................................................................................... 31

K.    Modification of Plan. ............................................................................................ 31

L.     Final Decree. ........................................................................................................ 31

EXHIBIT A – JOINT PLAN OF REORGANIZATION OF VENTILEX USA INC. AND
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS
OF APRIL 1, 2011, AS MODIFIED ................................................................................33

EXHIBIT B – MOST RECENTLY ISSUED PREPETITION QUARTERLY
FINANCIAL STATEMENT ............................................................................................33

EXHIBIT C – MOST RECENTLY FILED POSTPETITION OPERATING REPORT.............33

EXHIBIT D – LIQUIDATION ANALYSIS.................................................................................33

EXHIBIT E – FIVE-YEAR FINANCIAL PROJECTION, ASSUMING AN EFFECTIVE
DATE OF SEPTEMBER 15, 2011...................................................................................33

4064120.2

## I.      INTRODUCTION

This is the disclosure statement (the "<u>Disclosure Statement</u>") in the Chapter 11 Case of Ventilex USA Inc. (the "<u>Debtor</u>").  This Disclosure Statement has been prepared by the Debtor and the Official Committee of Unsecured Creditors (the "<u>Committee</u>" and, together with the Debtor, the "<u>Plan Proponents</u>") and contains information about the Debtor describing the *Joint Plan of Reorganization of Ventilex USA Inc. and the Official Committee of Unsecured Creditors Dated April 1, 2011, as Modified* (as the same may be amended, supplemented, or otherwise modified, the "<u>Plan</u>") filed on June 24, 2011.  A full copy of the Plan is attached to this Disclosure Statement as <u>Exhibit A</u>.  All capitalized terms not defined in this Disclosure Statement are defined in Article I of the Plan.

**Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, then you may wish to consult one.**

The proposed distributions under the Plan are discussed in Article III(B) of this Disclosure Statement.  General unsecured creditors are classified in Class 7.  Based upon the best, good-faith estimates of the Debtor and their advisors, the Plan Proponents believe that the holders of Allowed General Unsecured Claims will receive an estimated distribution in a range of up to forty-eight percent (48%) under the Plan, if it is confirmed.  **This is an estimation only. Nothing contained herein is a guarantee of any particular recovery pursuant to the Plan.**

### A.      Purpose of this Document

This Disclosure Statement describes, among other things:

- The Debtor and significant events during the bankruptcy case;
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the Plan is confirmed);
- Who can vote on, or object to, the Plan;
- What factors the Bankruptcy Court will consider when deciding whether to confirm the Plan;
- Why the Plan Proponents believe the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement, and discuss it with your attorney, if you have one.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.  In the event of any inconsistencies between this Disclosure Statement and the Plan, the provisions of the Plan shall govern in all respects.  The Debtor may file a plan supplement (the "<u>Plan Supplement</u>") with the Clerk of the Bankruptcy Court at least ten (10) days prior to the last day upon which holders of Claims may vote to accept or reject the Plan; <u>provided</u>, <u>however</u>, that the Debtor may amend the Plan and each of the other documents contained in the Plan Supplement, subject to Section 18.1 of the Plan, through and including the Effective Date, in a manner consistent with the Plan and Disclosure Statement.

Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement free of charge by contacting Colleen M. Beitel, Paralegal, Hahn Loeser & Parks LLP, 200 Public Square, Suite 2800, Cleveland, Ohio 44114; (216) 621-0150 (phone); (216) 241-2824 (fax); cmbeitel@hahnlaw.com.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.**

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**1.      Time and Place of the Hearing on Approval of the Plan.**

The hearing at which the Court will determine whether to grant approval of the Plan will take place on **_____day,** **____ ___, 2011, at __:__ _.m. E.T.**, in the courtroom of the Hon. Jeffery P. Hopkins, United States Bankruptcy Judge, 221 East Fourth Street, Suite 800 P, Cincinnati, Ohio 45202.

**2.      Deadline For Voting to Accept or Reject the Plan.**

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to:

> Hahn Loeser & Parks LLP
> Attn: Colleen M. Beitel, Paralegal
> 200 Public Square, Suite 2800
> Cleveland, Ohio 44114

See Article VII below for a discussion of voting eligibility requirements.  **Your ballot must be actually received on or before _____, 2011, or it may not be counted.**

**3.      Identity of Person to Contact for More Information.**

If you want additional information about the Plan, then you should contact Hahn Loeser & Parks LLP; c/o Colleen Beitel, Paralegal; 200 Public Square, Suite 2800, Cleveland, Ohio 44114; (216) 621-0150 (phone); (216) 241-2824 (fax); cmbeitel@hahnlaw.com.

**C.      Disclaimer.**

*The Court has not yet determined whether the Plan meets the legal requirements for confirmation.  Approval of this Disclosure Statement, does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## II.    BACKGROUND

### A.    Description and History of the Debtor's Businesses.

The Debtor, which has been in business since 2001, is headquartered in Middletown, Ohio, where it has been located for approximately the past two years. The Debtor is a small organization, serving customers located in the United States, Canada, and Mexico.  The Debtor is the exclusive distributor in the United States of industrial equipment designed and manufactured by Ventilex B.V. ("BV") of The Netherlands, its parent and sole shareholder. Such products include fluid bed dryers, fluid bed cookers, fluid bed coolers, fluid bed conditioners, fluid bed roasters, fluid bed freeze dryers, fluid bed steam pasteurizers, flash dryers, steam sterilization systems, air filtration systems, and scrubbers.

Customers for this equipment are typically producers of bulk minerals, chemicals and food, and they operate large plants to produce their products. The equipment that the Debtor provides is typically only one part of a large system housed in special-purpose facilities. The customers are most typically large companies with many plants. They require testing and process development by suppliers like the Debtor in order to provide custom equipment that perfectly matches their needs. The equipment is typically part of a large construction project along with many other suppliers. As such, delays are inevitable and schedules are often changed. The Debtor cannot predict with high certainty exactly when equipment will be ordered or installed, although the order cycle is often one to two years.

It is industry standard for customers to make deposits and provide "progress payments" to suppliers of custom capital goods, like the Debtor. The Debtor uses progress accounting according to GAAP – sales and margins are taken as payments received over the life of the project.  The Debtor averaged approximately $4.6 million in annual sales between 2002 and 2009, peaking at approximately $10.46 million in 2007.  Sales in 2010 were approximately $3.03 million.  The Debtor forecasts sales of approximately $4.5 million in 2011.  Since 2001, the company has served approximately 53 customers with an average order size of $700,000.00. The Debtor typically completes six to nine orders per year.

### B.    Officers, Directors, and Shareholder(s) of the Debtor.

Below is a list of all the Debtor's officers, directors, and shareholder(s), along with such parties' role with the Debtor, any compensation received from the Debtor during one year prior to the Petition Date, and any compensation received from the Debtor during the Debtor's Chapter 11 Case as of the date of this Disclosure Statement.

| Name | Role/Relationship | Compensation for one year prior to Petition Date | Compensation During Chapter 11 Case |
|---|---|---|---|
| Ventilex B.V. | 100% shareholder of the Debtor | $0.00[1] | $0.00 |
| Michael C. Hadjinian | President and Chief Executive Officer | $26,739.62 | $ 103,304.90 |
| Amos Robinson | Former Interim President | $150,533.43[2] | $0.00 |
| Thomas J. Schroeder | President | $151,435.31[3] | $0.00 |
| Michael Martell | Secretary/Director | $0.00[4] | $0.00 |
| Ronald Vane | Chairman of the Board/Director | $0.00 | $0.00 |
| Gert Buist | Director | $0.00 | $0.00 |

**C.     Management of the Debtor Before and During the Bankruptcy.**

Prepetition Management.  With the exception of (a) Michael C. Hadjinian, who joined the Debtor in August 2010; (b) Amos Robinson, who served as Interim President from August 2009 to June 30, 2010; (c) and Thomas Schroeder, who served as President prior to June 30, 2009, during the two years prior to the Petition Date, the officers, directors, managers or other persons in control of the Debtor were those individuals identified in Section II(B) above.

Postpetition Management.  After the Effective Date, the Board of the Reorganized Debtor shall consist of Michael C. Hadjinian, Michael L. Martell, and George Batenburg; and the Officers of the Reorganized Debtor shall be Michael C. Hadjinian (President), Jeffrey McGrady (Vice President), and Michael L. Martell (Secretary).

---

[1] Ventilex B.V. received $235,419.55 during the one year prior to the Petition Date; however, such amount was not compensation attributable to its role as insider/shareholder of the Debtor.  Payment of this amount was disclosed by the Debtor in its Item 3(c) of its *Statement of Financial Affairs* filed on October 12, 2010 [Dkt. No. 46].  The Committee has asserted that Ventilex B.V. received certain other prepetition transfers that may be avoided and recovered for the benefit of the Debtor's estate.  Ventilex B.V. disputes all such assertions.  These transfers are discussed in Section II(e) herein.

[2] Amount paid to Robinson Industrial Sales, Inc.  Amount includes compensation and other payments.  For further detail, please reference Item 3(c) from the Debtor's *Second Amendment to Schedules B, F and G, Statement of Financial Affairs and Summary of Schedules* [Dkt. No. 78].

[3] Amount includes compensation and other payments.  For further detail, please reference Item 3(c) from the Debtor's *Second Amendment to Schedules B, F and G, Statement of Financial Affairs and Summary of Schedules* [Dkt. No. 78].

[4] The Committee has asserted that Mr. Martell's law firm, Morrison Cohen LLP, is an insider of the Debtor and received prepetition transfers that may be avoided and recovered for the benefit of the Debtor's estate.  Morrison Cohen LLP disputes all such assertions.  These transfers are discussed in Section II(e) herein.

4064120.2

D.      **Events Leading to Chapter 11 Filing.**

A number of factors caused the Debtor to seek bankruptcy protection. Among other things, the current recession and unavailability of credit caused the equipment market to contract significantly over the past few years, thereby significantly constricting sales and cash flow. In addition, during 2007, the Debtor expanded its product offerings to include equipment used in almond pasteurization, primarily in the State of California. In connection with this offering, certain equipment was not certified by the California Almond Board before a stated deadline. This caused some customers to assert substantial claims, one of which (a claim in the approximate amount of $4.9 million in favor of Paramount Farms International, LLC f/k/a Paramount Farms, Inc. ("Paramount")) proceeded to judgment.

E.      **Significant Events During the Bankruptcy Case.**

The Debtor has successfully taken advantage of the benefits of the chapter 11 process in order to (i) right-size its operations; (ii) restructure its balance sheet; and (iii) solicit a Plan Sponsor to position the Debtor to emerge from chapter 11.  Specifically, during the bankruptcy case and related proceedings, the following significant events occurred:

- The Debtor retained the law firm of Hahn Loeser & Parks LLP as counsel to the Debtor; Arete Management Solutions, LLC  as financial advisor to the Debtor; and Kami Fund Consulting as its tax accountant (collectively, "Debtor's Professionals").  The Debtor's Professionals assisted the Debtor to achieve the steps and goals necessary to complete the right-sizing of their operations and the restructuring of their balance sheet.

- The Debtor reconciled significant alleged pre-petition sales and income tax liability.

- After negotiating with many different financing sources, the Debtor obtained Bankruptcy Court approval of a favorable $400,000.00 post-petition loan facility from BV, the proceeds of which were used to finance the Debtor's post-petition operations.

- The Debtor restructured BV's pre-petition secured claim, in the approximate amount of $1.9 million, reducing it to the amount of $833,884.36 and restructuring repayment thereof over sixty (60) months at prime rate.

- The Debtor employed the broad discovery rules afforded to debtors-in-possession in order to investigate valuable claims and causes of action against third parties believed to have interfered with the Debtor's operations.  These claims include, without limitation, the Dijkman Claims, TEMA Claims, and Riviana Claims, all of which are described in the Plan.   All proceeds of these claims and causes of action will be used to fund the Reorganized Debtor's operations, although the success or failure of the Reorganized Debtor's operations is not contingent upon the Reorganized Debtor's success or failure in pursuing these claims and causes of action.

- The Plan Proponents successfully negotiated the terms under which BV will serve as the Plan Sponsor, in connection with which the BV will be contributing not less than $2,807,280.38 in Plan Consideration, consisting of $1,050,000.00 in new Plan Cash;

- 5 -

$170,000.00 in Plan Sponsor Additional Capital Contribution; $125,000.00 in "store credit" being extended by to Silver Creek; the conversion of the $400,000.00 DIP Loan Balance into New Equity; and the conversion of the $1,062,280.38 Allowed Prepetition Lender Deficiency Claim into New Equity.

- The Debtor investigated the alleged claims of the Debtor's top four largest alleged general unsecured creditors, all members of the Committee: Paramount ($5,276,934.02)[5]; California Nut Company ("Cal Nut") ($3,67,726.81); John B. Sanfilippo & Son, Inc. ("JBS") ($1,676,500.00); and SCMFS LLC a Texas LLC dba Silver Creek Frac Sand LLC ("Silver Creek") ($505,994.00).   The Debtor does not believe that any of the foregoing claims should be allowed in the asserted amounts; however, by way of the Plan, has proposed treatment that would resolve these claims in a manner that is fair and equitable to these creditors, as well as in the best interests of the Debtor's estate.  For a summary of the proposed treatment of these alleged claims, please see Section III below.[6]

- The Debtor investigated the alleged claim of the Ohio Department of Taxation ($312,426.05) for unpaid sales and use taxes.  During this process, representatives of the Debtor, with the assistance of its tax accountant, met on a number of occasions with representatives of the Ohio Department of Taxation in order to review the Debtor's records and fully disclose all pertinent information.  The Debtor believes that the alleged claim should be disallowed in its entirety, and has provided ample documentation of this conclusion to the Ohio Department of Taxation.   Nevertheless, due primarily to the closing of a number of field offices for the Ohio Department of Taxation, the Debtor has been unable to obtain verification from the Ohio Department of Taxation that it agrees with the Debtor's analysis.  Accordingly, to the extent necessary, the Debtor intends to object to the allowance of the Ohio Department of Taxation's alleged claim before the Confirmation Hearing.

- The Committee sought and obtained authority from the Court to perform discovery related to certain insider transactions and relationships and to bring certain claims, including claims for recovery of preferential and fraudulent transfers from insiders, on behalf of the estate.  The Committee exercised its right to perform discovery and investigated valuable causes of action against insiders of the Debtor.

- The Committee commenced two adversary proceedings on behalf of the Debtor's estate:

  *Official Committee of Unsecured Creditors v. Morrison Cohen LLP*, Case No. 11-ap-01035, pursuant to which the Committee seeks to avoid and recover $1,391,550.86 in allegedly preferential payments received by the Debtor's pre-petition counsel, Morrison Cohen LLP.

  *Official Committee of Unsecured Creditors v. Ventilex B.V.*, Case No. 11-ap-01036, pursuant to which the Committee seeks to avoid and recover $1,862,623.26 in allegedly

---

[5] Paramount asserts that its claim is entitled to secured status.

[6] As of the filing of this Disclosure Statement the Debtor is attempting to secure such creditors' consent to their treatment under the Plan, in order to help facilitate an expeditious, value-maximizing reorganization.  To the extent that such consent is not secured, the Debtor intends to object to the allowance of such creditors' claims.

preferential transfers by the Debtor to BV; to disallow the prepetition claim of BV; and to recover damages for alleged breach of contract/warranty, in the amount of $7,321,160.81. BV has filed a motion to dismiss this action and compel international arbitration of the alleged claims and causes of action therein.

The Plan Proponents believe both of the above captioned actions should be resolved pursuant to the Plan, particularly given the amount of value that BV is contributing pursuant to the Plan and the risk, cost, and expense of litigation, which cost is augmented further in the case of BV and its request to compel international arbitration.

**F.      Projected Recovery of Preferential or Fraudulent Transfers.**

The Debtor has not yet completed its investigation with regard to prepetition transactions. If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer possibly avoidable under the Bankruptcy Code or applicable state law, the Debtor or the Litigation Trustee may seek to avoid and recover such transfer from you.

**G.      Debtor's Current Financial Condition.**

The Debtor's most recent quarterly financial statement issued before commencement of the Chapter 11 Case is set forth in Exhibit B to this Disclosure Statement.

The most recent post-petition operating report filed since the commencement of the Chapter 11 Case is set forth in Exhibit C to this Disclosure Statement.

**III.     SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A.      What is the Purpose of the Plan of Reorganization?**

As required by the Bankruptcy Code, the Plan places Claims and Equity Interests in various Classes and describes the treatment that each Class will receive. The Plan also states whether each Class of Claims or Equity Interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.      Unclassified Claims.**

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code. These claims are not considered impaired and, because they are not considered impaired, the holders of such claims do not vote on the Plan. Such claim holders may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. As such, the Debtor has *not* placed the following Claims in any Class:

**1.      Administrative Expenses.**

Administrative expenses are costs or expenses of administering the Chapter 11 Case, which are entitled to priority under section 507(a)(2) of the Bankruptcy Code. The Bankruptcy

Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. Based on its current and forecasted budget, the Debtor does not anticipate there to be significant unpaid Administrative Expense Claims as of the Effective Date.

**2.      Post-Petition Lender Claim.**

As indicated above, BV made a $400,000.00 post-petition loan to the Debtor, the resulting claim for which is entitled, among other things, to payment in full before all other claims under the Bankruptcy Code. Notwithstanding this priority, BV has agreed to convert this debt into equity in the Reorganized Debtor and, as a result, there will be no payments to BV on account of this debt pursuant to the Plan.

**3.      Professional Compensation and Reimbursement Claims.**

**Debtor's Professionals.**   Allowed Professional Compensation and Reimbursement Claims of the Debtor's Professionals shall be paid by the Reorganized Debtor or the Disbursement Agent in full (a) in Plan Cash on the earliest of (i) the Effective Date, or as soon thereafter as reasonably practicable; or (ii) thirty (30) days after the subject Professional Compensation and Reimbursement Claim of the Debtor's Professional becomes Allowed; or (b) pursuant to terms, and subject to conditions, agreeable to the holder of the subject Allowed Professional Compensation and Reimbursement Claim.

**Other Estate Professionals.**  Allowed Professional Compensation and Reimbursement Claims of the Other Estate Professionals shall be paid by the Reorganized Debtor or the Disbursement Agent in full (a) in Plan Cash on the earliest of (i) the Effective Date, or as soon thereafter as reasonably practicable; or (ii) thirty (30) days after the subject Professional Compensation and Reimbursement Claim of the Other Estate Professional becomes Allowed; or (b) pursuant to terms, and subject to conditions, agreeable to the holder of the subject Allowed Professional Compensation and Reimbursement Claim.

**4.      Priority Tax Claims.**

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive (i) Plan Cash from the Reorganized Debtor in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as reasonably practicable; (ii) at the Reorganized Debtor's option, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, equal semi-annual Cash payments from the Reorganized Debtor in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate equal to 3.0% per annum, over a period ending not later than five (5) years after the Petition Date; or (iii) upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments from the Reorganized Debtor having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim.

C.      **Classes of Claims and Equity Interests.**

Claims (other than Administrative Expense Claims, Professional Compensation and Reimbursement Claims, and Priority Tax Claims) and Equity Interests are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax | Unimpaired | Deemed to Accept |
| 2 | Prepetition Lender Claim | Impaired | Yes |
| 3 | Paramount Secured Claim | Impaired | Yes |
| 4 | Cal Nut Claim | Impaired | Yes |
| 5 | JBS Claim | Impaired | Yes |
| 6 | Silver Creek Claim | Impaired | Yes |
| 7 | General Unsecured Claims | Impaired | Yes |
| 8 | Equity Interests | Impaired | Deemed to Reject |

Claims (other than Administrative Expense Claims, the Post-Petition Lender Claim, Professional Compensation and Reimbursement Claims, and Priority Tax Claims) and Equity Interests are treated the same within each Class. The treatment of Claims and Interests by Class pursuant to the Plan is as follows:

| Class | Designation | Treatment |
|---|---|---|

4064120.2

| Class | Designation | Treatment |
|-------|-------------|-----------|
| 1 | Priority Non-Tax | Unless otherwise mutually agreed upon by the holder of an Allowed Priority Non-Tax Claim and the Reorganized Debtor, each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, Plan Cash from the Reorganized Debtor in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable. |

- 10 -

| Class | Designation | Treatment |
|---|---|---|
| 2 | Prepetition Lender | **Prepetition Lender Secured Claim.** The Prepetition Lender Secured Claim is hereby Allowed in the amount of $833,884.36, which amount shall be paid over sixty (60) months with fixed interest on the unpaid balance at prime rate per annum, the first of which payments shall be due on or before the fifteenth (15th) day of the calendar month immediately following the month in which the Effective Date occurs. The Reorganized Debtor's obligation to pay the Allowed Prepetition Lender Secured Claim shall be secured by a first-priority security interest in all of the Reorganized Debtor's assets.<br><br>**Prepetition Lender Deficiency Claim.** The Prepetition Lender Deficiency Claim shall be Allowed in the amount of $1,062,280.38, which Allowed Prepetition Lender Deficiency Claim shall be deemed converted into New Equity in the Reorganized Debtor as of the Effective Date.<br><br>**Reservation of Third-Party Rights.** As set forth more fully in Section 16.11 of the Plan, any and all rights, claims, and causes of action of BV as against Paramount are expressly reserved, preserved, and unmodified by the Plan. |

| Class | Designation | Treatment |
|---|---|---|
| 3 | Paramount Secured Claim | The Paramount Secured Claim shall be Allowed on the Effective Date.  In full and final satisfaction of the Allowed Paramount Secured Claim, Paramount shall receive (1) $1,000,000.00 in Plan Cash (the "Paramount Payment"); and (2) a twenty-five percent (25%) interest in the Surplus Liquidation Trust Funds.[7]  The Paramount Payment shall be actually received by Paramount within five (5) business days after the Effective Date.<br><br>Upon Paramount's actual receipt of the Paramount Payment, Paramount, on the one hand, and the Debtor, the Debtor's estate, the Liquidation Trust, and the Reorganized Debtor, on the other hand, shall be deemed to have mutually waived and released any and all claims and causes of action, at law or in equity, known or unknown, fixed or contingent, existing as of the Effective Date.<br><br>Reservation of Third-Party Rights.  As set forth more fully in Section 16.11 of the Plan, any and all rights, claims, and causes of action of Paramount as against BV are expressly reserved, preserved, and unmodified by the Plan. |

---

[7] "Surplus Liquidation Trust Funds" means the Liquidation Trust Funds remaining after payment in full of (a) fees, costs, and expenses of administering the Liquidation Trust, including without limitation, any and all taxes and Liquidation Trustee fees, costs, and expenses; and (b) all Allowed Class 7 Claims.  (Plan § 1.98.)

4064120.2

| Class | Designation | Treatment |
|---|---|---|
| 4 | Cal Nut Claim | The Cal Nut Claim shall be Allowed on the Effective Date.  In full and final satisfaction of the Allowed Cal Nut Claim, upon JBS's actual receipt of the JBS Payment, JBS shall be deemed to have transferred all legal and equitable right, title, and interest in the JBS Unit to Cal Nut.  Such conveyance of the JBS Unit shall be on an as-is, where-is, with-all-faults basis, and without warranty of any kind from the Debtor, Reorganized Debtor, or Plan Sponsor.<br><br>In addition to the foregoing distributions, Cal Nut shall also receive, in full and final satisfaction of the Allowed Cal Nut Claim, a twenty-five percent (25%) interest in the Surplus Liquidation Trust Funds<br><br>Upon JBS's actual receipt of the JBS Payment, Cal Nut, on the one hand, and the Debtor, the Debtor's estate, the Liquidation Trust, the Plan Sponsor, and the Reorganized Debtor, on the other hand, shall be deemed to have mutually waived and released any other or further claims and causes of action, at law or in equity, known or unknown,  fixed or contingent, against the Debtor, the Debtor's estate, or the Reorganized Debtor existing as of the Effective Date. |

- 13 -

| Class | Designation | Treatment |
|-------|-------------|-----------|
| 5 | JBS Claim | The JBS Claim shall be Allowed as of the Effective Date.  In full and final satisfaction of the Allowed JBS Claim, JBS shall receive (1) $170,000.00 in Cash from the Reorganized Debtor (the "**JBS Payment**"); and (2) a twenty-five percent (25%) interest in the Surplus Liquidation Trust Funds.  The JBS Payment shall be actually received by JBS within five (5) business days after the Effective Date.<br><br>Upon JBS's actual receipt of the JBS Payment, JBS, on the one hand, and the Debtor, the Debtor's estate, the Liquidation Trust, the Plan Sponsor, and the Reorganized Debtor, on the other hand, shall be deemed to have mutually waived and released any other or further claims and causes of action, at law or in equity, known or unknown,  fixed or contingent, against the Debtor, the Debtor's estate, or the Reorganized Debtor existing as of the Effective Date. |

4064120.2

| Class | Designation | Treatment |
|-------|-------------|-----------|
| 6 | Silver Creek Claim | The Silver Creek Claim shall be Allowed as of the Effective Date.  In full and final satisfaction of the Allowed Silver Creek Claim, Silver Creek shall receive (1) a twenty-five percent (25%) interest in the Surplus Liquidation Trust Funds; and (2) a credit, in the amount of $125,000.00 (the "**Silver Creek Credit**"), which may be (i) applied, in whole or in part, by Silver Creek to future purchases of goods and/or services from the Reorganized Debtor; or (ii) sold, transferred, or otherwise conveyed, in whole or in part, by Silver Creek to third parties, with the prior written consent of the Reorganized Debtor, which consent shall not be unreasonably withheld; provided, however, that any partial sale, transfer, or conveyance of the Silver Creek Credit shall not be in an amount less than $25,000.00.   Unless otherwise agreed in writing by the Reorganized Debtor, any unapplied amount of the Silver Creek Credit automatically shall be deemed expired, null, and void as of December 31, 2014.<br><br>On the Effective Date, Silver Creek shall be deemed to have waived and released any and all claims and causes of action, at law or in equity, known or unknown, fixed or contingent, against the Debtor, the Debtor's estate, the Plan Sponsor, or the Reorganized Debtor existing as of the Effective Date; provided, however, that such waiver and release shall not extend to any and all rights, claims, or causes of action under this Plan or the Confirmation Order.  If Silver Creek votes in favor of the Plan, and otherwise supports confirmation of the Plan, the waiver and release set forth in this subsection shall be deemed to be mutual. |

- 15 -

| Class | Designation | Treatment |
|-------|-------------|-----------|
| 7 | General Unsecured Claims | As soon as practicable after the later to occur of the Effective Date and the day on which a General Unsecured Claim becomes an Allowed General Unsecured Claim, the holders of Allowed General Unsecured Claims shall receive Liquidation Trust Interests in the amount of their Pro Rata Share of the Liquidation Trust Assets, entitling them to a Pro Rata Share of Plan Trust Funds for distribution in accordance with Article IX of the Plan and the Liquidation Trust Agreement. The Liquidation Trust shall be funded by Net Plan Cash in an amount not less than $50,000.00 on the Effective Date or as soon thereafter as reasonably practicable. |
| 8 | Equity Interests | On the Effective Date all existing prepetition Equity Interests shall be deemed canceled and extinguished. Holders of Equity Interests shall not receive any distribution under the Plan. |

**D.      Means of Implementing the Plan.**

**1.      Plan Sponsor.**

BV shall serve as the Plan Sponsor.  Generally, "plan sponsors" provide the required capital or other consideration necessary in order for a debtor to reorganize successfully and emerge from chapter 11.

**2.      Restructuring Transactions.**

On the Effective Date, the following transactions shall be effectuated in the following order:

(i)      <u>Plan Cash Payment by Plan Sponsor</u>.  The Plan Sponsor shall pay the Plan Cash ($1,050,000.00, subject to upward adjustment as provided in the Plan) to the Reorganized Debtor, which Plan Cash shall be held by the Reorganized Debtor in a segregated, interest-bearing account until the Net Plan Cash is transferred to the Liquidation Trust in accordance with the Plan.

(ii)     <u>Plan Sponsor Additional Capital Contribution</u>.  The Plan Sponsor shall make the Plan Sponsor Additional Capital Contribution ($170,000.00) in exchange for New Equity in the Reorganized Debtor.

(iii)    <u>Conversion of DIP Loan Balance Into New Equity</u>.   The DIP Loan Balance shall be deemed converted into New Equity in full and final satisfaction of the Post-Petition Lender Claim.

(iv)    <u>Conversion of Allowed Prepetition Lender Claim Into New Equity</u>.  The Allowed Prepetition Lender Deficiency Claim shall be deemed converted into New Equity in full and final satisfaction of the Allowed Prepetition Lender Deficiency Claim.

(v)     <u>Issuance of New Shares</u>.  The Reorganized Debtor shall issue New Shares to the Plan Sponsor.

(vi)    <u>Modified Trademark License Agreement</u>.  The Reorganized Debtor and the Plan Sponsor shall modify that certain Trademark License Agreement dated July 10, 2010, between the Debtor and BV, in order to provide that the Term (as defined therein) shall be no less than one (1) calendar year beginning on the Effective Date.

### 3.      The Liquidation Trust

<u>Creation of Liquidation Trust</u>.  On the Effective Date, the Debtor or the Reorganized Debtor, as the case may be, on its own behalf and on behalf of the holders of Allowed General Unsecured Claims (including Prepetition Lender Deficiency Claim) shall execute a Liquidation Trust Agreement and shall take all other steps necessary to establish the Liquidation Trust in accordance with and pursuant to the terms of the Plan.

<u>Purpose of Liquidation Trust</u>.  The Liquidation Trust shall be established for the sole purpose of liquidating the Liquidation Trust Assets, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

<u>Liquidation Trust Governance</u>.  The Trust shall have a governing body consisting of three (3) members selected by the Committee (the "<u>Liquidation Trust Advisory Committee</u>").  The Committee shall have the right to choose the Liquidation Trustee, which Liquidation Trustee may be a member of the Committee and must be reasonably acceptable to the Debtor.  If a dispute arises regarding the appointment of the Liquidation Trustee, the Bankruptcy Court shall retain jurisdiction to resolve such dispute.

<u>Initial Funding of Liquidation Trust</u>.  On or before the fifth (5th) Business Day after the day on which all Plan Cash Claims are paid in full, the Reorganized Debtor shall pay the Net Plan Cash to the Liquidation Trust.

<u>Funding of Expenses of the Liquidation Trust</u>.  Upon the transfer of the Liquidation Trust Assets to the Liquidation Trust, none of the Debtor, Reorganized Debtor, or Plan Sponsor shall have any further obligation to provide any funding or assets whatsoever with respect to the Liquidation Trust.  All fees, costs, and expenses of the Liquidation Trust or Liquidation Trustee,

including without limitation all professional fees, costs, and expenses, shall be paid out of the Liquidation Trust Assets.

Trust Distributions. The Liquidation Trustee will make distributions of Liquidation Trust Funds to holders of Liquidation Trust Interests as provided herein and in the Liquidation Trust Agreement; provided, however, that the none of Paramount, Cal Nut, JBS, or Silver Creek shall participate in any distribution of Liquidation Trust Funds, except to the extent that there are Surplus Liquidation Trust Funds, and then only to the extent of their respective twenty-five percent (25%) interest in Surplus Liquidation Trust Funds.

Transfer of all Other Liquidation Trust Assets to the Liquidation Trust. Except with respect to Retained Causes of Action, which vest in the Reorganized Debtor as of the Effective Date, all Liquidation Trust Assets including, without limitation, Causes of Action not released by the Plan, shall be transferred to the Liquidation Trust. The Liquidation Trust shall be authorized to prosecute all Liquidation Trust Claims transferred to it, including Avoidance Actions, as deemed appropriate under the Bankruptcy Code or applicable state or federal law. In connection with any Causes of Action transferred to the Liquidation Trust, the Liquidation Trust may be plaintiff in such actions or, to the extent that actions are instituted prior to the Effective Date of the Plan, the Liquidation Trust will have the right to substitute as plaintiff in such actions. The proceeds of such actions shall be for the sole benefit of the holders of Allowed General Unsecured Claims.

## 4. Vesting of Assets in the Reorganized Debtor or Liquidation Trust.

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the estate of the Debtor shall vest in the Reorganized Debtor or the Liquidation Trust, as the case may be, free and clear of all Claims, Liens, encumbrances, and other interests, except as provided in the Plan, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtor and the Debtor-in-Possession except as may be otherwise provided in the Plan. From and after the Effective Date, the Reorganized Debtor, subject to the terms of the Plan, may operate its business and may use, acquire, and dispose of property free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as may be otherwise provided in the Plan.

## 5. Cancellation of Debt and Equity Securities and Related Obligations.

Except (a) as otherwise expressly provided in the Plan, (b) with respect to Executory Contracts that have been assumed by the Debtor, (c) for purposes of evidencing a right to distributions under the Plan, or (d) with respect to any Claim that is Allowed under the Plan, on the Effective Date, any instruments or documents evidencing any Claims or Equity Interests shall be deemed automatically cancelled and deemed surrendered without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtor under the agreements, instruments, and other documents, indentures, and certificates of designations governing such Claims and Equity Interests, as the case may be, shall be discharged; provided, however, that such instruments or documents shall continue in effect solely for the purpose of (x) allowing the holders of such Claims to receive their distributions under the Plan and (y) allowing

- 18 -

the Liquidation Trustee to make such distributions to be made on account of such Allowed Claims.

### 6.    Preservation and Prosecution of Causes of Action Held by the Debtor.

In accordance with section 1123(b) of the Bankruptcy Code, (a) the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action; and (b) the Liquidation Trust may enforce all rights to commence and pursue, as appropriate, any and all Liquidation Trust Claims, and the Reorganized Debtor's and Liquidation Trust's rights to commence, prosecute, or settle their Retained Causes of Action and Liquidation Trust Claims, respectively, shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue its Retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or Liquidation Trustee, as applicable, will not pursue any and all available Causes of Action against them. The Reorganized Debtor and Liquidation Trust expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Reorganized Debtor and the Liquidation Trustee, as the case may be, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation Order.

The Reorganized Debtor and Liquidation Trust reserve and shall retain the Retained Causes of Action and Liquidation Trust Claims, respectively, notwithstanding the rejection of any Executory Contract during the Chapter 11 Case or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor or the Liquidation Trust, as the case may be. As of the Effective Date, the Reorganized Debtor shall have assigned the Liquidation Trust Claims to the Liquidation Trust. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

### 7.    Provision for Treatment of Disputed Claims Under the Plan.

(a)    <u>Claim Objections by Liquidation Trustee</u>.  The Liquidation Trustee shall have the sole power and authority to object to the allowance of all Claims not otherwise allowed under this Plan, which, if Allowed, are payable by the Liquidation Trust.

(b)    <u>Claim Objections by Reorganized Debtor</u>.  The Reorganized Debtor shall have the sole power and authority to object to the allowance of all Claims not otherwise allowed

- 19 -

under this Plan, which, if Allowed, are payable by the Reorganized Debtor; provided, however, that any interested party may object to the allowance of Professional Compensation and Reimbursement Claims.

(c)     Deadline for Claim Objections.   Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor and/or the Liquidation Trustee, as the case may be, shall file and serve all objections to Claims as soon as practicable, but, in each instance, not later than sixty (60) days following the Effective Date or such later date as may be approved by the Bankruptcy Court.

(d)     No Distributions Pending Allowance.   Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

(e)     Estimation of Claims.   Unless otherwise limited by Final Order of the Bankruptcy Court, the Reorganized Debtor and/or the Liquidation Trustee may at any time request that the Bankruptcy Court estimate for final distribution purposes any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor, the Reorganized Debtor, or the Liquidation Trustee previously objected to such Claim. The Bankruptcy Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Unless otherwise provided in an order of the Bankruptcy Court, in the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the estimated amount shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court; provided, however, that if the estimate constitutes the maximum limitation on such Claim, the Debtor, the Reorganized Debtor, or the Liquidation Trustee, as the case may be, may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim, and; provided, further, that the foregoing is not intended to limit the rights granted by section 502 of the Bankruptcy Code.

(f)     Payments and Distributions on Disputed Claims.

(1)     Disputed Claims Reserve.   From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by Final Order, the Disbursement Agent (which is the Reorganized Debtor, in the case of Allowed Claims payable by the Reorganized Debtor, and the Liquidation Trustee, in the case of Allowed Claims payable by the Liquidation Trustee) shall reserve and hold in escrow for the benefit of each holder of a Disputed Claim, including any gains, interest or income attributable thereto, in an amount equal to distributions which would have been made to the holder of such Disputed Claim if it were an Allowed Claim equal to the least of (i) the Disputed Claim Amount; (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which

- 20 -

such Claim ultimately may become an Allowed Claim; or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Disbursement Agent.

The purpose of this reserve is to help to ensure that the holders of Disputed Claims receive the amount to which they otherwise would have been entitled had their claims been Allowed Claims as of the Effective Date of the Plan.

(2)     Allowance of Disputed Claims.  At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Disbursement Agent shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan, together with any interest which has accrued on the amount of Cash so reserved (net of any expenses, including any taxes on the escrow, relating thereto), but only to the extent that such interest is attributable to the amount of the Allowed Claim.  Such distribution, if any, shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing or disallowing such Disputed Claim becomes a Final Order but in no event more than thirty (30) days thereafter.

## IV.     RISK FACTORS

The proposed Plan has the following risks:

- The economic condition of the nation is at an unprecedented crossroad, and estimates relating to future economic performance of the Reorganized Debtor are subject to change based on market conditions beyond the Reorganized Debtor's control.

- The Debtor has made certain assumptions regarding the future of the demand for capital equipment and ancillary services provided by the Debtor.  Market assumptions are subject to change.

- Because the Plan Sponsor is the manufacturer of equipment distributed by the Debtor (and, ultimately, to be distributed by the Reorganized Debtor) a change in the financial condition of the Plan Sponsor could impact the Reorganized Debtor's business.  Much like other risk factors, this is beyond the Reorganized Debtor's control.

## V.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES

If you are a party to a pre-petition contact or lease with the Debtor, there is a chance that this contract or lease is an "Executory Contract" under the Plan and, therefore, will be assumed or rejected pursuant to the Plan.

## A.     Assumption or Rejection of Executory Contracts and Unexpired Leases.

Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all Executory Contracts that exist between the Debtor and any Person or Entity designated on Schedule 12.1 of

- 21 -

the Plan Supplement shall be deemed assumed by the Debtor, as of the Effective Date, except for any Executory Contract (a) that has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date and for which the motion was filed prior to the Confirmation Date; or (b) as to which a motion for approval of the rejection of such Executory Contract has been filed and served prior to the Confirmation Date; provided, however, that the Debtor and the Reorganized Debtor reserve the right, on or prior to the later of the Confirmation Date or ten (10) days after a Final Order determining cure or any request for adequate assurance of future performance, to amend Schedule 12.1 of the Plan Supplement to delete any Executory Contract therefrom or add any Executory Contract thereto, in which event such Executory Contract(s) shall be deemed to be, respectively, assumed or rejected.  The Debtor or the Reorganized Debtor shall provide notice of any amendment to Schedule 12.1 of the Plan Supplement to the parties to the Executory Contracts affected thereby.  The listing of a document on Schedule 12.1 of the Plan Supplement shall not constitute an admission by the Debtor that such document is an Executory Contract or that the Debtor has any liability thereunder.

**B.      Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.**

Subject to Section 12.1 of the Plan, entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a), 365(d)(2) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the Executory Contracts assumed pursuant to Section 12.1 of the Plan; (b) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, within which the Debtor may assume, assume and assign, or reject the Executory Contract specified in Section 12.1 of the Plan through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such Executory Contracts; and (c) the approval, pursuant to sections 365(a), 365(b)(2) and 1123(b)(2) of the Bankruptcy Code, of the rejection of all Executory Contracts not assumed pursuant to Section 12.1 of the Plan.

**C.      Inclusiveness.**

Unless otherwise specified on Schedule 12.1 of the Plan Supplement, each Executory Contract listed or to be listed on Schedule 12.1 of the Plan Supplement shall include modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed on Schedule 12.1 of the Plan Supplement.

**D.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.**

Except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed by the Debtor pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code. All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Reorganized Debtor's liability with respect thereto, or as otherwise may be agreed to by the parties.

E.      **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.**

Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 12.1 of the Plan must be filed with the Bankruptcy Court and served upon the Debtor (or, on and after the Effective Date, Reorganized Debtor) and the Liquidation Trustee no later than **thirty (30) days after the later** of (a) notice of entry of an order approving the rejection of such executory contract or unexpired lease; (b) notice of entry of the Confirmation Order; and (c) notice of an amendment to Schedule 12.1 of the Plan Supplement. All such Claims not filed within such time will be forever barred from assertion against the Debtor and its estate, the Reorganized Debtor or the Liquidation Trust and its property.

**As of April 1, 2011, no Executory Contracts have been rejected by the Debtor. Nevertheless, that does not ensure that an Executory Contract will not be rejected at some point between April 1, 2011, and the Confirmation Date. Any claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.**

## VI.      TAX CONSEQUENCES OF PLAN

Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors. Nothing contained herein or in the Plan is or should be deemed or construed to be tax advice on the part of the Debtor, Reorganized Debtor, or otherwise.

## VII.     CONFIRMATION REQUIREMENTS AND PROCEDURES

Generally. To be confirmable, the Plan must meet the requirements listed in sections 1129(a) or (b) of the Bankruptcy Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired Class of Claims must accept the Plan, without counting votes of insiders of the Debtor; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in section 1129 of the Bankruptcy Code, and they are not the only requirements for confirmation.

A.      **Who May Vote or Object**

Any party in interest with standing to do so may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes; and (2) impaired under the Plan. This is discussed more fully below.

In this case, the Plan Proponents believe that Classes two (2) through seven (7) in the Plan are impaired and that holders of Claims in each of these Classes are, therefore, entitled to

- 23 -

vote to accept or reject the Plan.  The Plan Proponents believe that Class one (1) in the Plan is unimpaired and that holders of Claims in this Class, therefore, do not have the right to vote to accept or reject the Plan.

### 1.    What Is an Allowed Claim or an Allowed Equity Interest?

Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's *Schedules of Assets and Liabilities* [Dkt. Nos. 46 & 56], unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor or equity interest holder has filed a proof of claim or equity interest, and an objection to such claim or equity interest has not been filed.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for entities other than governmental units to file a proof of claim or interest in the Chapter 11 Case was January 11, 2011.*

*The deadline for governmental entities to file a proof of claim or interest in the Chapter 11 Case was March 28, 2011.*

### 2.    What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an Allowed Claim or Equity Interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in section 1124 of the Bankruptcy Code, a Class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class.

### 3.    Who is Not Entitled to Vote on the Plan?

The holders of the following types of Claims and Equity Interests are *not* entitled to vote:

- holders of Claims and Equity Interests that have been disallowed by an order of the Court;

- holders of other Claims or Equity Interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes only;

- holders of Claims or Equity Interests in unimpaired Classes;

- holders of Claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code;

- holders of Claims or Equity Interests in Classes that do not receive or retain any value under the Plan; and

- 24 -

- administrative expense claimants.

***EVEN IF YOU ARE NOT ENTITLED TO VOTE ON THE PLAN, YOU HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.***

**B.      Votes Necessary to Confirm the Plan.**

If impaired classes exist, the Court cannot confirm the Plan unless (i) at least one (1) impaired class of creditors has accepted the Plan without counting the votes of any insiders of the Debtor within that class; and (ii) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section (B)(3).

**1.      Votes Necessary for a Class to Accept the Plan.**

A Class of claims accepts the Plan if both of the following occur: (i) the holders of more than one-half (1/2) of the allowed claims in the Class, who vote, cast their votes to accept the Plan, and (ii) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the Class, who vote, cast their votes to accept the Plan.

A Class of Equity Interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the Class, who vote, cast their votes to accept the Plan.

**2.      Treatment of Non-Accepting Classes.**

Even if one or more impaired Classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner prescribed by section 1129(b) of the Bankruptcy Code.  A plan that binds non-accepting Classes is commonly referred to as a "cramdown" plan.  The Bankruptcy Code allows the Plan to be binding upon non-accepting Classes of claims or equity interests if the Plan meets all the requirements for consensual confirmation, except the voting requirements of section 1129(a)(8) of the Bankruptcy Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired Class that has not voted to accept the Plan.

**3.      Cramdown of the Plan.**

Section 1129(b) of the Bankruptcy Code allows a Bankruptcy Court to confirm a plan, even if such plan has not been accepted by all impaired classes entitled to vote on such plan, provided that such plan has been accepted by at least one impaired class. With respect to the Plan, because Class 8 is deemed to reject the Plan, the Debtor intends to seek the application of the requirements set forth in Section 1129(b) of the Bankruptcy Code for confirmation of the Plan despite any lack of acceptance by all impaired Classes.  Section 1129(b) of the Bankruptcy Code provides that, notwithstanding the failure of an impaired class to accept a plan of reorganization, the plan must be confirmed, on request of the plan proponent, in a procedure commonly known as "cramdown," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of impaired claims or interests that has not accepted the plan.

- 25 -

The condition that a plan be "fair and equitable" with respect to a rejecting class of secured claims includes the requirements that (a) the holders of such secured claims retain the liens securing such claims to the extent of the allowed amount of the claims, whether the property subject to the liens is retained by the debtor or transferred to another entity under the plan; and (b) each holder of a secured claim in the class receives deferred cash payments totaling at least the allowed amount of such claim with a present value, as of the effective date of the plan, at lease equivalent to the value of the secured claimant's interest in the Debtor's property subject to the liens.

The condition that a plan be "fair and equitable" with respect to a rejecting class of unsecured claims includes the requirement that either (a) such class receive or retain under the plan property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (b) if the class does not receive such amount, no class junior to the non-accepting class will receive a distribution under the plan.

The condition that a plan be "fair and equitable" with respect to a rejecting class of equity interests includes the requirements that either (a) the plan provides that each holder of an equity interest in such class receive or retain under the plan, on account of such equity interest, property of a value, as of the effective date of the plan, equal to the greater of (i) the allowed amount of any fixed liquidation preference to which such holder is entitled; (ii) any fixed redemption price to which such holder is entitled; or (iii) the value of such equity interest; or (b) if the rejecting class does not receive such amount, no class of equity interests junior to the rejecting class will receive a distribution under the plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

## C.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation on the Effective Date.  The Plan Proponents believe that the Plan provides substantially more value to creditors than a liquidation.

If the Debtor were liquidated pursuant to chapter 7 of the Bankruptcy Code, the first $400,000.00 of cash proceeds plus interest and fees would be paid to the Post-Petition Lender on account of its Post-Petition Claim (assuming a fully-drawn post-petition loan).  The balance of the proceeds, if any, would be payable to the Pre-Petition Lender on account of its Pre-Petition Claim (approximately $1.9 million), to the extent Allowed.  The Debtor does not believe that the liquidation value of its assets exceeds the approximately $2.3 million in proceeds that would be payable to the Post-Petition Lender and Pre-Petition Lender before any proceeds would be available for payment of any other claims in a liquidation scenario.

Under the Plan, however, through a combination of cash contributions by the Plan Sponsor, and a conversion of the post-petition DIP Loan into New Equity, the Debtor and Plan Sponsor have ensured that all creditors receive a recovery, with the holders of Allowed General Unsecured Creditors estimated to receive up to forty-eight percent (48%) on account of their

- 26 -

claims (which amount may be further augmented by any recoveries by the Liquidation Trustee). A liquidation analysis is attached as <u>Exhibit D</u> to this Disclosure Statement.

**D.    Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**1.    Ability to Fund Plan Initially**

Except with respect to Allowed Professional Fee Claims, with respect to which the Debtor anticipates reaching mutually-agreeable post-Effective Date payment arrangements to be set forth in the Confirmation Order, between Cash on hand, any remaining DIP Loan availability (estimated to be $100,000.00 as of April 1, 2011), the infusion of Plan Cash ($1,050,000.00), and the Plan Sponsor Additional Capital Contribution ($170,000.00), the Debtor believes that it will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on such date.

**2.    Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Plan Proponents must also show that the Reorganized Debtor will have enough cash over the life of the Plan to make the required Plan payments.  The Plan reflects the successful restructuring of the Debtor's business by management since the Petition Date.  The Plan takes into consideration the Debtor's actual results through February 28, 2011, and management's five-year projections.  Management's estimates and projections are considered reasonable based on the restructuring, recent financial performance, current market conditions and anticipated future growth prospects of the Debtor.  A five-year financial projection, assuming an Effective Date of September 15, 2011, is attached as <u>Exhibit E</u> to this Disclosure Statement.

**VIII.   EFFECT OF CONFIRMATION OF PLAN**

**A.    Title to and Vesting of Assets.**

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the estate of the Debtor shall vest in the Reorganized Debtor or the Liquidation Trust, as the case may be, free and clear of all Claims, Liens, encumbrances, and other interests, except as provided in the Plan, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtor and the Debtor-in-Possession except as may be otherwise provided in the Plan. From and after the Effective Date, the Reorganized Debtor, subject to the terms of the Plan, may operate its business and may use, acquire, and dispose of property free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as may be otherwise provided in the Plan.

4064120.2

B.      **Discharge of Claims and Termination of Equity Interests.**

Except as otherwise provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall be in exchange for and in complete satisfaction and discharge of all existing debts and Claims, and shall terminate all Equity Interests, of any kind, nature, or description whatsoever, including any interest accrued on such Claims from and after the Petition Date, against or in the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, on the Effective Date, all existing Claims against the Debtor and Equity Interests in the Debtor, shall be, and shall be deemed to be satisfied and discharged, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtor or the Liquidation Trust, or any of their respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.

C.      **Discharge of Debtor.**

Upon the Effective Date and in consideration of the Distributions to be made hereunder, except as otherwise expressly provided in the Plan, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have such Claim or Equity Interest satisfied and discharged by the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all Persons and Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from asserting against the Debtor, the Debtor-in-Possession, the Liquidation Trust, or their respective successors or assigns, including, without limitation, the Reorganized Debtor, the Liquidation Trust, or their respective assets properties or interests in property, any discharged Claim or Equity Interest in the Debtor, any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not the facts or legal bases therefore were known or existed prior to the Confirmation Date regardless of whether a proof of Claim or Equity Interest was filed, whether the holder thereof voted to accept or reject the Plan or whether the Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest.

D.      **Injunction on Claims.**

The Plan provides very broad injunctive provisions, of which you should be aware. Generally, except as otherwise expressly provided in the Plan, the Confirmation Order, or such other Final Order of the Bankruptcy Court that may be applicable, all Persons or Entities who have held, hold, or may hold Claims or other debt or liability that is discharged, or Equity Interests or other right of equity interest that is discharged pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from pursuing or seeking to enforce such Claims or Interests against the Reorganized Debtor, Plan Sponsor, or Liquidation Trust, or otherwise interfering with the Reorganized Debtor's operations.  Please pay particular attention to these injunctive provisions, which are detailed in Section 16.5 of the Plan.

- 28 -

E.      **Term of Existing Injunctions or Stays.**

Unless otherwise provided in the Plan, the Confirmation Order, or a separate Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

F.      **Exculpation.**

Pursuant to the Plan, none of the Debtor, the Reorganized Debtor, Plan Sponsor, and any of their respective directors, officers, employees, members, attorneys, consultants, advisors, and agents (but solely in their capacities as such), shall have or incur any liability to any holder of a Claim or Equity Interest or to any other Entity for any act taken or omitted to be taken in connection with, related to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation, approval, or administration of the Plan or any compromises or settlements contained therein, the Disclosure Statement related thereto, the property to be distributed under the Plan, or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that these provisions shall not affect the liability of (a) any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, including, without limitation, fraud and criminal misconduct; or (b) the Debtor's Professionals pursuant to applicable codes of professional conduct. Any of the foregoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

G.      **Preservation of Causes of Action / Reservation of Rights.**

*The Plan contains broad provisions pursuant to which Causes of Action are reserved and preserved pursuant to the Plan and Confirmation Order, for current or future pursuit by the Reorganized Debtor or the Liquidation Trustee, as the case may be.  If you are a party to a Cause of Action, then the cause of action is either retained by the Reorganized Debtor or transferred to the Liquidation Trust.*

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release, or the relinquishment of any rights or Causes of Action that the Debtor, the Reorganized Debtor, or the Liquidation Trust may have or which the Reorganized Debtor or the Liquidation Trust may choose to assert under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Causes of Action against any Person or Entity, to the extent such Person or Entity asserts a cross-claim, counterclaim and/or Claim for setoff which seeks affirmative relief against the Debtor, the Reorganized Debtor, their officers, directors, or representatives; (ii) the turnover of any property of the Debtor's estate; and (iii) Causes of Action (other than the Released Claims) against current or former directors, officers, professionals, agents, financial advisors, underwriters, lenders, or auditors relating to acts or omissions occurring prior to the Effective Date.

- 29 -

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release, or relinquishment of any Cause of Action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Reorganized Debtor or the Liquidation Trust, as the case may be, shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced or the Liquidation Trust Claims had not been transferred to the Liquidation Trust in accordance with the Plan, and all of the Reorganized Debtor's legal and equitable rights respecting any Claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

To facilitate the preservation of Causes of Action and the reservation of rights provided in the Plan, the Debtor incorporates herein the Debtor's response to question 3.b of the Statement of Financial Affairs filed by the Debtor, which is attached to the Plan as Schedule 16.8. Each Entity having received a transfer as noted on Schedule 16.8 is hereby notified that the Liquidation Trustee may institute litigation to recover such transfers.

**H.      Injunction on Causes of Action.**

Except as provided in the Plan, as of the Effective Date, all non-Debtor Entities are permanently enjoined from commencing or continuing in any manner, any Causes of Action, whether directly, derivatively, on account of or respecting any debt or Cause of Action of the Debtor, the Debtor-in-Possession, the Plan Sponsor, or the Reorganized Debtor which the Debtor, the Debtor-in-Possession, the Plan Sponsor, the Reorganized Debtor, or the Liquidation Trust, as the case may be, retain sole and exclusive authority to pursue in accordance with the Plan or which has been released pursuant to the Plan, including, without limitation, pursuant to Article XVII of the Plan.

**I.      Limited Release of Officers, Directors, and Employees.**

Except with respect to claims and causes of action commenced before the hearing on confirmation of the Plan, any and all claims and causes of action of the Debtor's estate against its present officers, directors, employees, consultants, and agents and arising from or relating to the period prior to the Petition Date are waived and released under the Plan.  As of the Effective Date, except with respect to claims and causes of action commenced before the hearing on confirmation of the Plan, the Debtor also shall be deemed to have waived and released its present officers, directors, employees, consultants, and agents who were officers, directors, employees, consultants, or agents, respectively, at any time during the Chapter 11 Case, from any and all claims and causes of action of the Debtor's estate arising from or relating to the period from and after the Petition Date.  Notwithstanding the foregoing, nothing contained in the Plan is intended, nor shall it be construed, to release any of the Debtor's claims or causes of action that may exist against the Debtor's director and officer liability insurance.  Notwithstanding the foregoing, nothing contained in the Plan is or shall be deemed to be a release of any Retained Causes of Action.

- 30 -

**J.      Other Releases**

**The Plan provides for certain other releases that may be material to your consideration of the Plan.**   These are detailed in Section 16.11 of the Plan, but may be summarized as a mutual waivers and releases, subject to certain limited exceptions, of any and all claims and causes of action existing as of the Effective Date between or among the Debtor, its estate, the Debtor-in-Possession, the Reorganized Debtor, the Committee, the Liquidation Trust, the Liquidation Trustee, and the Plan Sponsor.

**K.      Modification of Plan.**

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan, the Plan Supplement, or any exhibits to the Plan at any time prior to entry of the Confirmation Order.  Upon entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, including, without limitation, to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

**L.      Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Liquidation Trustee or such other party as the Court shall designate in the Plan or Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

To the extent that there are any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained in the Plan shall govern.  The Plan Proponents reserve the right to amend, supplement, or otherwise modify this Disclosure Statement and all attachments hereto, or documents referenced herein, at or before any hearing on approval of this Disclosure Statement.

Dated: June 24, 2011                    VENTILEX USA INC.


                                         By:


                                         /s/ Rocco I. Debitetto
                                         Lee D. Powar (0033679)
                                         Rocco I. Debitetto (0073878)
                                         Hahn Loeser & Parks LLP
                                         200 Public Square, Suite 2800
                                         Cleveland, Ohio 44114
                                         Telephone:    (216) 621-0150
                                         Facsimile:    (216) 241-2824
                                         E-Mail:       ldpowar@hahnlaw.com
                                                       ridebitetto@hahnlaw.com


                                         *COUNSEL FOR DEBTOR AND
                                         DEBTOR-IN-POSSESSION*

                                         AND

                                         THE    OFFICIAL   COMMITTEE   OF
                                         UNSECURED CREDITORS:

                                         By:


                                           /s/ Scott N. Schreiber
                                           Scott N. Schreiber (*Pro Hac Vice*)
                                           Shelly A. DeRousse (*Pro Hac Vice*)
                                           Stahl Cowen Crowley Addis, LLC
                                           55 West Monroe Street, Suite 1200
                                           Chicago, Illinois 60603
                                           Phone: (312) 641-0060
                                           Facsimile (312) 641-6959
                                           sschreiber@stahlcowen.com
                                           sderousse@stahlcowen.com


                                           *COUNSEL   FOR   THE   OFFICIAL
                                           COMMITTEE    OF   UNSECURED
                                           CREDITORS*

4064120.2

## EXHIBITS

EXHIBIT A – JOINT PLAN OF REORGANIZATION OF VENTILEX USA INC. AND THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED AS OF APRIL 1, 2011, AS
MODIFIED


EXHIBIT B – MOST RECENTLY ISSUED PREPETITION QUARTERLY FINANCIAL
STATEMENT


EXHIBIT C – MOST RECENTLY FILED POSTPETITION OPERATING REPORT


EXHIBIT D – LIQUIDATION ANALYSIS


EXHIBIT E – FIVE-YEAR FINANCIAL PROJECTION, ASSUMING AN EFFECTIVE DATE OF
SEPTEMBER 15, 2011

4064120.2